ALBANY,
Dec. 1829.

Stafford
v.
Bryan.

---

SPENCER STAFFORD, survivor, &c. *appellant*, and JOHN
BRYAN, *respondent*.

An acknowledgment which is to have the effect of taking a stale demand out of the operation of the statute of limitations, ought to be clear and explicit in relation to *the subject* or *demand* to which it refers.

If effect can be given to the declarations or admissions which may be proved to have been made by a defendant without referring them to the demand upon which the suit is brought, they will not be considered as referring to such demand, and as evidence of a new promise to pay it; and especially will they not be so considered where the defendant, in an answer to a bill of discovery, denies under oath that he has ever acknowledged or promised to pay the demand. .

An answer in chancery, responsive to and fully denying a material allegation in a bill, will prevail, unless it be disproved by more than one witness

ERROR from chancery. In December, 1826, the appellant, as the survivor of the firm of Staffords and Spencer, filed a bill of discovery in the court of chancery, alleging the making of a promissory note by the respondent to the firm of Staffords and Spencer, for the sum of $821,24, bearing date the 14th June, 1814, and payable on demand, alleging the loss or destruction of the note, and averring several acknowledgments of the note or new promises made by the defendant within a year before the filing of the bill, and particularly stating an offer made by an authorized agent of the respondent in August or September, 1826, to pay the face of the note. The bill concludes by praying a discovery and an account to be taken, &c.

The respondent in his answer, admits the making of the note, but claims and insists upon the benefit and advantage of the *statute of limitations*, as if the same had been pleaded in bar to the relief sought. He avers that the note had been fully paid, but when particularly, and how, and by whom, and to which of the co-partners (of the firm of Staffords and Spencer) it was paid, he, on account of the length of time which has elapsed, cannot recollect. He denies having, within six years before the filing of the bill, acknowledged the debt or promised to pay it. He admits that in August or September, 1826, he requested his counsel (a suit at law being then pending on the note in question) to ascertain from the appellant whether he would accept an endorsed note for the sum of $800 as *peace money*, and not by way of compromise or settlement of the demand, averring to his counsel at the time, and instructing him so to say to the appellant, that the note in question was fully extinguished and discharged. He states that upon that occasion he did not authorize his counsel to say that the $800 note would be given or endorsed by way of compromise or otherwise, in case the appellant was willing to take the same, intending to reserve to himself the right to buy his peace in such other manner as he might see fit; that he was induced to this course from an apprehension that the appellant might, though contrary to the fact, prove some declaration or admission which would subject him to the payment of the whole note, with interest. He admits that he was informed that an interview took place between his counsel and the appellant, and that the appellant refused to accept less than the whole amount of his demand.

Proofs were taken in the cause. The counsel of the respondent, referred to in the answer, was examined, and verified the account given of the negotiation with the appellant in August or September, 1826. Three witnesses, (Joab Stafford and Spencer Stafford, junior, sons of the appellant, and Lewis Benedict,) contradicted the answer in respect to the acknowledgment of indebtedness by the respondent. Joab Stafford testified that in the winter of 1822, '3, he and a Mr. Peckham called at the store of the respondent to purchase fur caps, and that he told the defendant (the respondent here)

that he had not brought any money with him to pay for them, and that the defendant replied, *that neither he nor any of his father's family need to bring any money with them when they came to purchase goods of him, as there was an old business between him and the complainant,* (the appellant here) *and the defendant was owing him a good deal of money, more probably than he could ever pay, and that therefore they had better take it out in furs.* Spencer Stafford, junior, testified that in the years 1821, '22 and '23, he was in the habit of calling at the defendant's shop every winter and purchasing fur caps and buffalo skins, and the defendant would never take any money in pay from him, alleging as a reason *that the defendant owed deponent's father, who is the complainant, a large sum of money,* and this was his best and easiest way to pay it. Lewis Benedict testified that in March, 1819, he presented the note in question to the respondent for settlement, and that the respondent then *agreed to give a note in renewal payable in September then next,* but subsequently declined to do so.

It appeared in evidence that the complainant, Spencer Stafford, had been connected with divers persons in business : the names of the firms with which he was thus connected of course had, from time to time, changed, in all of which, however, his interest continued. On the books of Stafford and Spencer, the first of those firms, an account against the respondent was balanced on the 17th March, 1815, subsequent to which there was. an item of charge under date of 18th April, 1815, to the amount of £2.2.0 ; and the next and last charge was of the date of 14th February, 1817, in which the note in question was debited to the respondent. The next account was in favor of the firm of Staffords, Spencer & Co. commencing in May, 1815, and ending in March 1819, the balance of which against the respondent was £50.15.6 ; and next an account was opened against the respondent by the firm of Spencer, Stafford & Co. commencing in December, 1822, and ending in December, 1823, the balance of which against the respondent was £18.3.0. On the other hand, it appeared that the respondent had an open, unsettled account against the complainant, commencing in November, 1815,

and ending in September, 1827, amounting to the sum of $235,77.

The cause was heard by Chancellor WALWORTH on the pleadings and proofs, and in October, 1828, he dismissed the bill with cost. The reasons of his decision will be found in 1 Paige's Ch. R. 239. The complainant below appealed.

J. Lansing, for appellant.

S. Dutcher, jun. for respondent.

Mr. Justice SUTHERLAND delivered the following opinion:

The answer of the defendant being responsive to and fully denying every material allegation in the bill must prevail, unless it be disapproved by more than one witness. Joab Stafford and Spencer Stafford, junior, the sons of the appellant, are the only witnesses who contradict the answer with respect to the acknowledgment of indebtedness by the defendant within six years. It will be observed that neither of these witnesses pretend that the note in question, or any other note, was mentioned by the defendant, or expressly alluded to by him ; he only admitted, in general terms, that he owed the complainant a large sum of money, without specifying whether it was by bond, by note or general balance of accounts. What, in the opinion of the defendant, would constitute *a large sum of money*, we have no evidence to determine ; no expression can be more vague and indeterminate. Its meaning would be entirely different when used by different persons, or even by the same person under different circumstances. It would be unsafe, therefore, to give to this epithet any peculiar significance. The admission of the defendant, then, was *that he owed the complainant.* It is unnecessary to determine whether this would be a sufficient acknowledgment of the note, under any circumstances, to take it out of the statute of limitations, because the evidence in the case shews that there was at that time an unliquidated account of long standing and to a considerable amount between the parties, to which the defendant may have referred, if in truth he made the declaration imputed to him by the witnesses. How the balance of the account stood at that time does not clearly

appear. It was an unsettled account, and the defendant may have supposed himself the debtor, though the fact might have been otherwise; the testimony of these witnesses, therefore, is not necessarily incompatible with the truth of the defendant's answer. He may have made the declaration imputed to him, and still never have intended to admit the existence or justice of *the note in question.* An acknowledgment, which is to have the effect of taking a stale demand out of the operation of the statute of limitations, ought to be clear and explicit in relation to the subject or demand to which it refers. The acknowledgment or new promise is to be affirmatively established by the plaintiff, and if effect can be given to the declarations or admissions, which may be proved to have been made by a defendant, without referring them to the demand upon which the suit may have been brought, they ought not to be considered as referring to such demand, and as evidence of a new promise to pay it; but most especially they ought not to be so considered when the defendant denies under oath that he has ever acknowledged or promised to pay the demand.

It is said by the supreme court of the United States in *Bell* v. *Morrison and others,* (1 Peter's R. 351,) that where a new promise is to be raised by implication from the acknowledgment of the party, such an acknowledgment ought to contain an unqualified and direct admission of a present subsisting debt, which the party is liable and willing to pay; if there be accompanying circumstances which repel the presumption of a promise or intention to pay, and if the expression be equivocal, vague and indeterminate, leading to no certain conclusion, but at best to probable inferences, which may effect different minds in different ways, they ought not to be considered as evidence of a new promise to revive the cause of action. Any other course would open all the mischiefs against which the statute was intended to guard innocent persons, and expose them to the danger of being entrapped in careless conversations and betrayed by perjuries. Although I cannot yield my assent to all the points decided in that case, nor to all the reasoning and positions advanced by the learned judge who delivered the opinion of the court, the general views to which I have alluded appear to me to be sound and

impressive, and to apply with considerable force to the case now under consideration.

But the testimony of these witnesses is not entirely unimpeached. Francis Bryan, the son of the defendant, swears that the fur caps purchased by the complainant's sons were purchased of him when his father was not present; and it appears, from the original entries in the defendant's books, that the articles were charged directly to the sons, and not to their father, the complainant. The circumstances stated by this witness, although not absolutely irreconcileable with the testimony of the Staffords, would nevertheless be entitled to some weight in a case depending upon the nice and accurate balance of evidence. But it is not necessary in this case to resort to such an analysis, as I am of opinion, for the reasons which I have already assigned, that admitting the testimony of the Staffords to be entirely unimpeached, it does not shew a sufficient acknowledgement of the note in question to take it out of the statute.

The testimony of the counsel referred to in the answer confirms, in every essential particular, the answer of the defendant, so far as relates to the motives and circumstances of the attempt which he made to effect a compromise with the complainant through the witness; it was obviously an effort to purchase his peace, and not an acknowledgment of the legal existence or justice of the claim.

In relation to the acknowledgment testified to by Mr. Benedict, it is only necessary to remark, that it was made in March, 1819, and the bill in this case was filed in December, 1826, nearly eight years after the acknowledgment. Admitting it to have been made, therefore, it is no evidence of a new promise within six years. This suit has no connection with the suits at law which were previously commenced.

I have taken no notice of the allegation and evidence in relation to the embezzlement or destruction of the note in question; the fact is positively denied under oath by the person accused, and the defendant also denies all knowledge of the fact, or that the note ever came to his possession. Whatever ground, therefore, the circumstances of the case might

have afforded for suspicion, the fact must be considered as legally disproved.

I see nothing so peculiar in the circumstances of this case as to exempt the unsuccessful party from the payment of costs, which was asked for on the argument of this case, in case the court should be of opinion that the decree of the chancellor ought to be affirmed. I am therefore for affirming the decree below, with costs.

Chief Justice SAVAGE and Mr. Justice MARCY expressed their concurrence in the opinion delivered.

Mr. Senator S. ALLEN also concured, briefly stating the reasons of his opinion.

Whereupon, it was unanimously ordered, adjudged and decreed that the decree of the chancellor be in all things affirmed, and that the appellant pay to the respondent his costs to be taxed.