# FENNO, et al. v. SAYRE & CONVERSE.

1. A bill for the foreclosure of a mortgage executed for the security of a promissory note, is not demurrable because the note is not exhibited, although there may be other defendants than the mortgagor himself.

2. Where a bill was filed to foreclose a mortgage and for general relief, against the mortgagor and other incumberancers, upon the assumption that the complainant's lien is paramount; although this assumption is false, the bill will not be defective for omitting to offer to pay to the superior incumberancers, what may be due them.

3. An allegation in a bill, that the complainants were proprietors of a note intended to be secured by the mortgage sought to be foreclosed, is sufficient, though it does not appear how they became proprietors.

4. The interest which a purchaser of land acquires, who has paid part of the purchase money, and taken a bond to convey the title upon the payment of the residue, may be sold or mortgaged; but the sub-purchaser, or mortgagee will take it subject to the equitable lien of the first vendor.

5. The registry of a deed for land, executed by a person not in possession, or who does not appear from the records to have had any connection with the title, will not operate as a notice to a subsequent purchaser.

6. A derivative purchaser without notice, cannot be affected by a notice to his immediate vendor; and if he purchases with notice he may protect himself by the want of notice in such vendor. So, although a purchase founded on a gaming consideration is void as between the parties, or in favor of a *bona fide* purchaser without notice, yet if a third person become the purchaser from the winner for a valuable consideration, without notice of the manner in which he became the proprietor, the title of such person will be valid.

7. Where the complainants allege that the contract by which the defendant acquired the conveyance of land was founded on a gaming consideration, and the defendant denies it in his answer, the allegation may be sustained by the testimony of witnesses.

8. The complainants as against L. one of the defendants stated, that they have been informed he claims some interest in some part of the lands in question, but will not assert that it was founded on a usurious or gaming consideration. They further state, that all the defendants acted with a full knowledge of their rights, and that they caused their mortgage to be recorded &c., before any of defendant's rights attached. On these statements they call on L. to set forth his contract &c.—when the same took place—the amount of money paid &c.—whether any part of the consideration of his payment was founded in usury, or gaming &c.—*Held*, that the interrogatories were authorized by the allegations, and that the answer of L. responsive to them, was evidence.

9. Usury is a defence personal to the party agreeing to pay it, or those who stand in his place as representatives.

10. Where a conveyance of land was induced by money lost at gaming, and also cash paid, although the contract is void, yet equity and moral justice require that the purchaser should be reimbursed the cash paid, before his title will be divested in favor of a prior incumbrancer who was not in possession and whose mortgage was not registered.

This cause comes here by writ of error from the Court of Chancery sitting at Cahawba.

THE defendants in error filed their bill against Wm. K. Paulling, Benjamin Glover, George W. Fenno, Columbus W. Lea and Messrs Cook & Kornegay, alleging that Paulling was indebted to them in the sum of nine thousand six hundred and thirty-five dollars and eighty-five cents, by promissory note, dated the thirty-first of May, 1837, and payable eighteen months thereafter, to Lewis W. Pond or bearer, at the Mobile Bank; and that to secure the payment thereof, he executed to them a mortgage in fee of certain lands situate in the county of Perry. The lands thus mortgaged, are particularly described in the mortgage which accompanies and makes part of the bill, as the south-west quarter of section seventeen, township sixteen, in range six; the west half of the south-west quarter of section eight, township sixteen, in range six; the west half of the north-west quarter of section seventeen, township sixteen, in range six; the west half of the north-east quarter of section twenty, township sixteen, in range six; the north-east quarter of the north-east quarter of section nineteen, township sixteen, in range six; the south-east quarter of the north-east quarter of section nineteen, township sixteen, in range six; the west half of the south-west quarter of section twenty, township sixteen, in range six; the west half of the north-west quarter of section eight, township sixteen, in range six; the north-west quarter of section twenty, township sixteen, in range six; all in the district of lands subject to sale at Cahawba.

The complainants further state, that at the time of the execution of the mortgage, Paulling held a bond from Benjamin Glover, conditioned to make title to the lands mortgaged, upon the payment of a certain sum of money therein specified; the greater part of which had been paid, and the residue Paulling undertook to pay, and obtain complete titles.

It is then stated, that in February or March, 1838, Paulling, in a course of gaming with George W. Fenno, lost a large sum of money, and with a view to settle his losses, transferred to the latter, Glover's bond, for title to the land in question; and in April or May, 1838, Fenno procured a title to be made to him by Glover.

The complainants also allege, that in 1838, or '39, Messrs Cook & Kornegay, a mercantile firm of Tuscaloosa, lent to Fenno a sum of money, as they are informed and believe, at a usurious rate of interest, and in order to secure its repayment, received from him a mortgage on the lands conveyed to him by Glover. That Paulling was in the possession during all the time the transaction between Fenno and Cook & Kornegay, was in a course of consummation; and the latter were fully informed of the complainant's lien. And further: the complainants have been informed and believe, that Fenno has tendered to Cook & Kornegay, the principal and interest, and demanded a reconveyance of the land.

It is further alleged, that Columbus W. Lea claims some interest in a part of the land, but under what circumstances he received a conveyance, the complainants are not prepared to state; but they charge that Glover, Fenno, Paulling, Cook & Kornegay, and Lea, all, at the time of the transactions in which they participated, were fully informed of their lien.

Each of the defendants are called on to answer the facts charged against them, and particularly to disclose the circumstances under which they became interested in the lands in question. The bill prays that the defendants may set forth all papers under which they claim, and whether any other persons are interested in the land; and especially that the title bond, or a copy from Paulling to Glover, if in existence, may, with all indorsements thereon, be exhibited: And further, a divestiture of the titles of the defendants, so far as they may be in conflict with the paramount claim of the complainants; that process of *subpœna* may issue, and for general relief.

Fenno, Cook & Kornegay, and Lea, answered the bill, and on the petition of complainants, it was dismissed as to Glover, and leave given to take his testimony, and taken as confessed, as to Paulling.

Fenno claims the benefit of a demurrer in his answer, and denies that he had any knowledge of the complainant's mortgage, until long after he had purchased and paid for the lands in question; and as he has not seen the note and mortgage, he cannot admit their existence, but insists that they may be proved, as also the registration of the latter. He admits that Glover had a good title to the lands, and insists that he puchased

Paulling's right to the same on the 23d of January, 1838, and received the title bond of the former, transferred by the latter on that day. That there was then due from Paulling to Glover, on acconnt of the purchase of the land, the sum of twenty-five hundred dollars, which he paid in March, 1838, besides about two hundred dollars interest, and the costs of a suit which had been brought for the recovery of the debt by Glover against Paulling ; and thereupon Glover and wife executed a deed conveying to him the land in fee simple. At the time this defendant made the purchase from Paulling, the mortgage to the complainants had not been recorded, nor did this defendant have actual notice thereof, until after he received the deed from Glover and wife ; and having paid a valuable consideration for the land, he insists that he is a *bona fide* purchaser for a valuable consideration without notice, and as such, entitled to the protection of equity.

The defendant protests against the right of the complainants to call on him to answer as to a course of gaming between Paulling and himself, and submits to the Court whether he shall respond to that charge. He denies that the bond of Glover was transferred to him for the purpose of settling the losses of Paulling, and avers that the consideration moving from him to the latter, was ten thousand dollars, paid as follows: twenty-seven hundred dollars, or thereabouts, amount due Glover from Paulling, including interest and costs ; a negro man for fifteen hundred dollars; a promissory note on Dr. Leland, for fourteen hundred dollars; one hundred and twenty-five dollars for a gin ; four hundred and thirty-four dollars in a note of this defendant, which he has since paid in cash, and the balance in a debt due and owing by Paulling to this defendant.

The defendant admits that he executed a deed in trust on a part of the land, to secure a debt to Cook & Kornegay, but he insists that that deed was executed in good faith, and the complainants have no right to inquire, whether the debt due to the *cestui que trust* by the defendant, was for a loan of money at a usurious rate of interest; He further states that the deed for the benefit of Cook & Kornegay, was executed long before he had any notice of complainant's mortgage.

The defendant also admits that he sold to Columbus W. Lea, one hundred and sixty acres of the land at ten dollars *per acre,*

and conveyed the same to him before he had any notice of the complainant's mortgage.

Cook & Kornegay, in their joint answer, state, that on or about the 16th of May, 1839, the defendant, Fenno, became indebted to them in the sum of five thousand and fifty dollars, and executed a deed of trust, with a condition of sale, on a plantation containing six hundred and forty acres, situate in the county of Perry, for the purpose of securing the payment of that debt; which deed has been duly recorded. At the time of the execution of the deed for their benefit, they had no notice of any incumbrance on the land conveyed; they knew Glover had been the legal proprietor thereof, and a regular conveyance from him to their grantor, was shown to them. They exhibit a copy of the deed of trust, and pray that the same may be taken as a part of their answer, which bears date the sixteenth day of May, 1839, being the same day on which Fenno's note to these defendants was made.

These defendants admit, that Fenno's indebtedness to them is founded on a loan of money by them to him, but they insist that the complainants cannot require them to discover the rate of interest which he was to pay them. They deny that Fenno has ever offered to pay them any part of the sum he owes them, or demanded of them a reconveyance of the land conveyed in trust for their benefit; and insist the registration of the complainant's mortgage, was not constructive notice, so as to defeat their claim.

Columbus W. Lea states, that on the 29th of March, 1838, he purchased of Fenno one hundred and sixty acres of the land undertaken to be conveyed by the mortgage from Paulling to the complainants, for which he paid Fenno in cash, the sum of sixteen hundred dollars. That his purchase was in good faith, untainted with usury or gaming, and without notice of a prior incumbrance. On the same day, without notice of the claims of others, he received a conveyance in fee simple, and caused it to be duly recorded in the office of the clerk of the County Court of Perry county, on the 25th of July, 1838, a copy of which he exhibits with his answer, and prays that it may be taken as a part thereof. To this answer the complainants filed a formal replication.

By a comparison of the deeds exhibited, with the answers of

Fenno, *et al. v.* Sayre & Converse.

Cook & Kornegay, and the defendant Lea, it appears that the lands conveyed to them, are the same as those embraced by the mortgage of Paulling to the complainants.

Testimony was taken, as well at the instance of the complainants as the defendants, which will be briefly stated, so far as it influenced the judgment of the Court.

Benjamin Glover (examined at the instance of the complainants) proves the sale of the lands in question to Paulling, as admitted by the pleadings; states the last payment for the same was made to him in 1837, by Fenno, who produced the bond he had given to Paulling, transferred to himself; and thereupon he conveyed to him the fee simple estate. Witness asked Fenno how he acquired the bond, to which he answered that he had been engaged with Paulling at a game of cards in Tuscaloosa, when the latter put up the land at sixteen thousand dollars, and he won it. The contract of sale was made between Glover and Paulling about five years previous to December, 1840; the latter took possession a short time after the contract was made, and retained it about two years.

J. A. Campbell, a witness for the complainants, proves that the complainants held notes on the defendant Paulling, one for twelve thousand dollars, to which Benjamin Glover and John Shields were parties, and two others, amounting in the aggregate to seven thousand dollars. On the first bill, a judgment was obtained at the spring term of the federal Court holden in 1837, against either Glover or Shields. It was agreed in May, 1837, as witness believes, that the debt should be settled; that two notes should be made for a part of it, to which Glover and Shields should be parties, and that the balance should be secured by mortgage. The settlement was thus made the evidence of indebtedness surrendered to Paulling, and in lieu thereof, the two notes of Paulling, Glover and Shields, and the mortgage now sought to be foreclosed, made and delivered to the complainants. Witness believes that complainants were proprietors of the note on which the mortgage is founded, on the 10th of December, 1839, as it was delivered to him for collection, on or about that day; that he knew or heard of no consideration having passed between Paulling and Lewis W. Pond, the payee of the note, or Pond and the complainants; he treated the note as the property of the complainants, and drew the

mortgage accordingly. From the terms in which the mortgage was drawn, he considers that Paulling was bound to obtain a title to the lands, free from incumbrances.

John C. Cabiness, a witness for the complainants, testifies that he has seen Fenno and Paulling playing at cards, when they were alternately loser and winner. Heard Fenno say that he had beaten Paulling, and understood Paulling let him have a tract of land which he had purchased of Glover; but heard Fenno say, that he had to pay Glover twenty-seven hundred dollars, or thereabouts, before he could obtain possession; in addition to which, he had let Paulling have money and other property. The lands he understood, were situate in Perry county. Understood that Cook & Kornegay lent Fenno, five or six thousand dollars, and took a mortgage on a part of the land. The loan consisted in part, either of a bill on the north, or of a bill of Cook & Kornegay, and about one thousand dollars in Brandon bank bills, which were selling at a discount of thirty or forty *per cent.* Does not know the rate of interest charged, but understood it was large. Has heard Fenno say that he had paid part of Cook & Kornegay's demand. Has heard both Fenno and Cook & Kornegay, express surprise at the lien set up by the complainants, and thinks they were all ignorant when the transaction took place between them, of its existence.

Jesse B. Nave, a witness, examined at the instance of the complainants, testifies that the mortgage from Paulling to the complainants, was recorded in the office of the clerk of the County Court of Perry, on the 29th of January, 1838, and to his deposition, attaches a copy of that mortgage, with a certificate of its acknowledgment and registration.

Other testimony was taken at the instance of the complainants, which is either confirmatory of that stated, or not noticed in the opinion of the Court.

John C. Cabiness, a witness, examined at the instance of the defendants, testifies that a mutilated paper, which professes to state the contract for the sale of the land from Paulling to Fenno, is written and subscribed in the hand writing of the former. That in the fall of 1837, as well as witness remembers, Paulling and Fenno played at cards in Tuscaloosa; that during, or after the game, the former proposed to transfer the land to the

latter, and in payment of the money lost at the game, and for other considerations did actually transfer it to Fenno. The land, he thinks, was estimated in the settlement, at twenty-five thousand dollars, the greater part of which was won by Fenno of Paulling. The witness heard the paper proved by him, spoken of in February, 1838, but is not certain whether he then saw it.

Lewis W. Pond, examined for defendants, states that the complainant, Converse, and himself, were co-partners in the mercantile business, in the city of Montgomery, from 1828, or '29, up to 1835, when Converse withdrew from the firm, selling his interest to others. During the continuance of the partnership, witness resided abroad, and the business was conducted by Converse in this State, who informed witness, that in liquidation of debts due the concern, he took many notes payable to witness alone, so as to enable him to sue in the Federal Court. Witness exhibits with his deposition, and verifies the copy of a paper, which states that Converse, in April, 1838, sold to him all his, Converse's interest, in the debts due their late partnership. He supposes the note which the mortgage to the complainants was intended to secure, was for a debt due Pond & Converse, and claims it under the agreement.

Witness never saw the note; had no dealings with Paulling, and no consideration ever passed from him to Paulling; nor does he know on what consideration it is founded; but he has heard of it, and that it was sued in the Federal Court at Mobile or Tuscaloosa, in his name.

Other facts are shown by the proof in the cause, but their recital is not necessary to the understanding of the points of law considered by the Court.

At the January term, 1841, of the Chancery Court, the cause was argued on a demurrer to the bill, and on a motion to dismiss for want of equity; but the bill was sustained. At the July term following, the cause was heard on bill, answers and proof. The Chancellor was of opinion that the contract between Paulling and Fenno, was void, because founded on a gaming consideration; that the mortgage to the complainants being recorded before the payment of the balance of the purchase money to Glover, Fenno, Cook & Kornegay, and Lea, are chargeable with a constructive notice of its contents. And

thereupon the Chancellor referred it to the master to ascertain what was due to complainants upon their mortgage, for principal and interest, and to tax their costs; and decreed that the defendants pay to the complainants what shall be reported due, &c. within one month after the same shall have been ascertained. In default of such payment, the defendant's equity of redemption is declared to be foreclosed, and a sale of the mortgaged premises is directed to be made, &c. and the money arising from the sale is to be appropriated in the first place, to pay and satisfy the amount due complainants, with costs, and the residue, the master was directed to retain, subject to the further order of the Court. The lands were directed to be sold in two several parcels, viz: the part claimed by Lea in one, and the part mortgaged to Cook & Kornegay, in another.

T. Williams and G. W. Gayle, for the plaintiffs in error. The bill was demurrable, and should have been dismissed for want of equity. The answer of Fenno denies that the transfer of Glover's bond was induced in consideration of Paulling's losses at an unlawful game, and cannot, under the statute, be contradicted by proof. Aik. Dig. 286; 7 Porter's Rep. 251; 1 Story's Eq. 89, 91. If, however, the answer could be assailed, it is not overbalanced by the proof in the record ; and besides, no one who was not a party to a contract tainted with gaming, can be heard to allege its illegality.

But the contract between Paulling and Fenno, was executed and legal titles transferred by Glover to the latter, so that even Paulling would be concluded, if the contract was in its inception illegal. 2 Stw't & P. Rep. 250. If, however, the transaction between Paulling and Fenno was tainted with gaming, and Sayre & Converse could allege it, yet Fenno is entitled to be refunded, all money or property he may have parted with in good faith. Fleetwood v. Jansen, *et al.* 2 Atk. Rep. 467; Skipwith v. Strother, 3 Rand. Rep. 214.

The mortgage from Paulling was invalid in its origin, as a security for money, because he had neither the legal or equitable title to the lands; the title continuing in Glover until the purchase money was paid him. 1 McCord's Ch. Rep. 278.— But if Paulling had a right subject to be mortgaged, Glover

had a paramount right to the balance of the purchase money, and could look to the land for his indemnity; and Fenno, who has paid the money under a contract with Paulling, must be substituted to the rights of Glover. 4 Bibb's Rep. 47; 5 Porter's Rep. 452; 6 Johns. Ch. Rep. 404.

Fenno's equity commenced on the 23d January, 1838, and this was before the complainant's mortgage was recorded; the paper proved by Cabiness shows this, and in the absence of opposing proof, must be regarded as *prima facie* true. The date of a deed or other writing, like every part of it, will be intended to be truly expressed. 3. Phil. Ev. 453, C. & H's notes.

If Fenno had notice of the mortgage to the complainants, neither Lea nor Cook & Kornegay, can be thereby affected; they can only be reached by a notice, actual or constructive. 3 Johns. Ch. Rep. 147; 1 ibid. 213; 1 Paige's Rep. 492; 1 Dess. Rep. 323. And the registration of that mortgage will not be regarded as constructive notice to them. 1 Johns. Ch. Rep. 566, 3 J. J. Marsh. Rep. 558.

The answers of all the defendants who answered, are responsive, either to the allegations of the bill, or to interrogatories proposed to them, and to entitle the complainants to relief, they must be disproved. 1 Gill & Johns. Rep. 270; 1 Har. & Johns. Rep. 301; 1 Call's Rep. 224; 2 Wheat. Rep. 380; 1 Paige Rep. 239; 3 Wend. Rep. 532; 2 Johns. Ch. Rep. 92; 1 Dess. Rep. 134; 9 Cranch's Rep. 153; 1 Bibb's Rep. 253; 1 Day's Rep. 156; 3 Hayw. Rep. 192; 1 Cow. Rep. 711; 4 Paige's Rep. 368; 3 Wheat. Rep. 527; 10 Johns. Rep. 525.

So the proof is defective in not showing an indebtedness by Paulling to the complainants, as against Lea, and Cook & Kornegay; and the evidence of Pond negatives the idea, that the note secured by the mortgage, is the property of the complainants.

*Lastly:* The bill is defective in not setting out a copy of the note, and alleging how the complainants became the proprietors of it, as well as in not offering to refund to Fenno, or those claiming under him what was due for money or property, *bona fide* advanced under his contract with Paulling.

EDWARDS, for the defendants in error. The mortgage to the complainants is of an older date than the contract between Paulling and Fenno, founded on a valuable consideration, and

was recorded before the conveyance was made by Glover to Fenno; and must prevail against the claim of the latter, which had its origin in a violation of the law. The contract which is exhibited with the deposition of Cabaniss, is not sufficiently proved as to the time of its execution; but at most it is a mere agreement to transfer a bond for titles, when certain conditions shall have been performed, which it is not pretended were performed until complainants mortgage was recorded. Aik. Dig. 209; 7 Porter's Rep. 251; 1 Story's Eq. 302; 2 Munf. Rep. 196; 4 ibid, 140; 16 Wend. Rep. 574.

The deed of trust in favor of Cook & Kornegay, was not executed until the complainants mortgage had been recorded; and besides, the debt it was intended to secure, is tainted with usury, so that they cannot be regarded as having acquired a lien, *bona fide,* and for a valuable consideration. Aik. Digest, 437; 1 Peters' Rep. 43, 1 McCord's Ch. Rep. 441; 6 Chranch's Rep. 252; 2 Peters' Rep. 527; 16 Wend. Rep. 575.

Lea's purchase was not made until after the complainants mortgage had been recorded, so that he is chargeable with a constructive notice, which will avoid his deed. 1 Ala. Rep. N. S. 186; 6 Wend. Rep. 203, 213 ; 4 Cow. Rep. 599 ; 1 Johns. Ch. Rep. 298, 394, 398. He can't insist that the registration of the mortgage was no notice to him, for Paulling's possession was a circumstance which should have induced him to examine the records of the County Court of Perry to ascertain whether he had, or pretended to have a claim to the land. The answer of Lea, in insisting that he is a *bona fide* purchaser without notice, is not responsive to the bill, but is affirmative of matter in avoidance, and as it is replied to, must be proved. 7 Cow. Rep. 362; 3 Atk. Rep. 314.

The jurisdiction of equity, is undoubted, and the objections made to the frame of the bill, and the right to offer testimony to disprove the answer of Fenno, are alike untenable. 1 Story's Eq. 302; 7 Porter's Rep. 251, Aik. Dig. 209. The assumption, that Paulling had no title which could be mortgaged is clearly indefensible. It is admitted that he had an interest that could be sold, and this admission proves it may be mortgaged, for a mortgage is but a conditional sale. 5 Stewart and Por. Rep. 215 ; 5 Porter's Rep. 452; 2 Munf. Rep. 196; 4 ibid. 140.

The fact, that the complainants were not parties to the gam-

ing, or did not participate in the usurious contract, rather commends them to the protection of equity. They were the first to acquire all of Paulling's rights without being answerable for any of his faults.

Fenno is not entitled to be refunded the money and value of property he parted with under his contract with Paulling. He cannot occupy a more favorable position than Paulling himself, and if Paulling had paid to Glover the balance of the purchase money due at the time he executed the mortgage to the complainants, he would not be entitled to be refunded the amount, upon a bill being filed to foreclose; for the terms of the mortgage, indicate that he had, or would obtain a clear fee-simple title. 3 Stew. and Por. Rep. 426; 4 Porter's Rep. 142. The fact that Fenno received a deed from Glover, will not prevent inquiry into the consideration of the contract between Paulling and Fenno. Aik. Dig. 209; 1 Story's Eq. 302; 10 Ves. Rep. 365; 18 ibid 382; 2 Munf. Rep. 194; 4 ibid 140; 7 Porter's Rep. 251.

COLLIER, C. J.—It was no ground of demurrer to the bill, that the promissory note which the mortgage from Paulling to the complainants was intended to secure, is not made an exhibit. The mortgage itself is exhibited, in which the note is described and this was sufficient to authorise its admission as evidence.

In respect to the omission in the bill to offer to refund to Fenno, or the persons authorised to receive it, the money paid by him to Paulling, it may be remarked, that the complainants do not admit the liability of the lands in controversy to reimburse his advances; but the bill is framed upon the hypothesis that their mortgage is not only prior in point of time, but is a lien, paramount to the claim of each of the defendants. If the complainants are not entitled to all the relief they ask, or can only obtain a decree of foreclosure and sale *sub modo,* their bill should not have been dismissed on demurrer, especially as it contains a prayer for such relief as is consistent with the case stated. It was entirely competent at the hearing, for the Chancellor to have ascertained the rights of the respective defendants, and to have directed by his decree, that the proceeds of the land subject to sale, should be applied to the payment of

the claims of the litigants, according to their legal preference. The land then being liable to the payment of the incumbrances, whether they were complainants or defendants, it was not indispensable to the complainants right to go into equity, that they should assume a personal responsibility to a defendant whose lien was superior to their's.

The allegation in the bill, that the complainants were proprietors of the note intended to be secured by Paulling, is quite sufficient. It is entirely immaterial whether they hold it under an indosement or not, if they are entitled to the money which may be collected thereon, they were authorised to take a mortgage for its security, and may well maintain a bill for its foreclosure.

The equity of the bill, it seems to us, will not admit of serious question. It alleges the existence of a forfeited and unsatisfied mortgage to secure a debt due to the complainants; states that other persons, who are made defendants, set up claims to the premises, which it is insisted, are invalid; prays that the adverse claims may be examined, and the complainants mortgage foreclosed, &c. A mere statement of the case shows that the questions proposed to be litigated, could only be settled in chancery.

The interest acquired by Paulling, in virtue of his purchase from Glover, and payment of the greater part of the purchase money, might be transferred or mortgaged, so as to invest the mortgagee with all the right to the land that Paulling had. But one claiming by purchase from a person who had nothing more than a bond for title, will stand in the same situation as his vendor did, and will be subject to the same equities in favor of the obligor or original vendor. The want of complete titles and the possession of the bond, though its condition may not show whether full payment has been made, are enough to induce inquiry, and to prevent a divestiture of an equitable lien. We have not had access to the case of Frazier v. Center, 1 McC. Ch. Rep. 278, which has been cited, to show, that the complainants mortgage is invalid in consequence of the imperfectness of the title of Paulling, but we apprehend it will be found to be strictly in harmony with the law, as we have stated it.

Subject to the lien of Glover for the payment of the purchase

money due him, the complainants mortgage, if duly recorded, would be an available security, so long as Paulling retained the actual possession of the premises. Possession is a fact, which should induce one to inqurie whether the possessor has title, and if he has incumbered it. It gives to one proposing to purchase, sufficient information, to enable him to examine understandingly into the state of the title; and whether the purchaser prosecutes the inquiry or not, he is chargeable with notice. Sugden on Vend. 542; Peters v. Goodrich, 3 Conn. Rep. 146; Jackson, *ex dem.* Merrick v. Post, 15 Wend. Rep. 588; Sterns v. Arden, 1 Johns. Ch. Rep. 260, Harris, *et al.* v. Carter's administrators, *et al.* 3 Stewart's Rep. 233. But whether the registration of the complainants mortgage, would operate as constructive notice to a purchaser from Fenno, after the relinquishment of possession by Paulling, is a question, by no means free from difficulty: and its solution must depend upon the construction of our registry acts. By the second section of the act of 1823, "to legalize registering and recording certain deeds of conveyances of land, in this State, and for other purposes," it is enacted, that "any deed, or conveyance of lands, tenements, or hereditaments, lying and being in this State, which shall be made and executed after the passage of this act, shall be void, and of no effect against a subsequent *bona fide* purchaser, or a mortgage for a valuable consideration, not having notice thereof, unless such deed or conveyance shall be acknowledged, or proved and certified, and lodged, within six calender months after the time of signing, sealing and delivering the same, with the clerk of the county court in the county in which the said lands, tenements, or hereditaments are situated, to be recorded by the said clerk : *Provided, nevertheless,* that such deed or conveyance, shall as between the parties and their heirs be valid and operative." The first section of the act of 1828, "concerning the registration of deeds and patents," is as follows: "All deeds recorded within six months from the date of their execution, shall have force and be valid and operative between the parties thereto, and subsequent purchasers and creditors, and all deeds recorded after the expiration of six months, shall be valid and operative, from the date of their registration, as to creditors and subsequent purchasers : *Provi-*

*ded*, that the same shall be valid at all times between the contracting parties."

· Although the act of 1823, declares, that any deed or conveyance of lands, &c. shall be void against a subsequent *bona fide* purchaser or mortgagee, for a valuable consideration without notice, unless the same shall be acknowledged or proved and recorded pursuant to its provisions; yet it by no means follows that the registrations of every deed shall operate as a constructive notice of its contents. The object of the registry acts was the prevention of fraud; and in advancement of that end the letter has been often made to yield to their spirit. Thus, although a deed is declared void, unless it is duly registered, it has been always held, that notice is equivalent to registration, and that a purchaser or incumbrancer with notice, cannot be permitted to allege that a deed set up against him was not recorded. Sugden's Vendors, 511, *et post.* And upon principle, it would seem that merely placing upon record, a deed from a person, not in possession, or who does not appear from the records, to have had any connection with the title himself, will not operate as a notice to a subsequent purchaser. There would be nothing to direct a purchaser to such a deed, and he could only acquire a knowledge of its contents by making a general examination of all deeds that had been registered in the office. · The law certainly never contemplated that a purchaser should take upon himself such· a task, the performance of which in some counties would perhaps require a year of unremitted labour. This precise question arose and was considered in Ballou v. Murray, 1 Johns. Ch. Rep. 566. In that case, it appears that Winter, the trustee, had· sold the estate of his *cestui que ·trust*, Mrs. Green to Ballou (Mrs. Green herself claiming under·a deed from one Heatley, for·whose use, Winter had previously holden.) The deed from Winter, it·was *in*sisted, passed no title, because Ballou purchased with a notice of the trust; addressing himself to the point, the Chancellor, proceeds.· ·" It has been said by the counsel for the plaintiffs, that Ballou was chargeable with notice of the trust, by means of the registry of the deed from Heatley to Mrs. Green, which recited the declaration of trust executed by Winter. The deed containing this recital, was registered on the 9th of April, 1810, but I cannot perceive any justice in obliging Ballou to take no-

tice of the contents of that deed. By what clew was he directed to look into the deed from Heatley to Mrs. Green? He was dealing with Winter, and supposing Winter's trust to be otherwise totally unknown to him, he might as well be required to examine the contents of every deed on record. If there had been any deed on record to which Winter was a party, he would have had a specific object and guide for inquiry; *coeca regens filo vestigia.* I have therefore not thought it reasonable to charge Ballou with a knowledge of the existing trust, by reason of the registry of Heatley's deed." The registry acts of New York, are doubtless intended to effect the same purpose as those of this State, and the difference in phraseology could not have influenced the decision of the case cited. We then consider it as a case in point, and sustained as it is by sound reasoning, yield to it the force of authority.

According to the testimony of Glover, Paulling must have ceased to occupy the land about the close of the year 1837, or the beginning of 1838, and could not, consequently, have been in possession at the time of Lea's purchase from Fenno, and at the time the latter executed the mortgage to Cook and Kornegay. This being the case, it follows from what we have said, that the registry of the complainants mortgage, was no notice of its existence, to either Lea, or Cook & Kornegay.

It is insisted for the defendants in error, that the contract between Paulling and Fenno, being founded on a gaming consideration, was void in its inception; the latter acquired no title to the land, and that those who claim under him cannot occupy a more favorable position. By the act of 1807, it is enacted that "all promises, agreements, notes, bills, bonds or other contracts, judgments, mortgages or other securities, or other conveyances whatsoever, made, signed, given, granted, drawn or entered into, or executed by any person, or persons whatsoever, after the passing of this act, where the whole, or any part of the consideration of such promise, agreement, conveyance or security, shall be for money or other valuable thing whatsoever, laid or betted at cards, dice, &c. or for reimbursing or repaying any money knowingly lent or advanced at the time or place of such play, &c. to any person or persons so gaming, &c. shall be utterly void and of no effect, to all intents and purposes whatsoever." This enactment is very similar to, and was,

30

doubtless suggested by a statute of Kentucky, passed in 1798; under which, several decisions, pertinent to the point we are considering have been made. In Jones &c. v. Sevier, 1 Litt. Rep. 50, it was held, where a person who has lost money at unlawful gaming, executes his note to a third person for the amount, and such person pays the winner an adequate consideration therefor, the note is not within the statute, and therefore valid; and a knowledge of the whole transaction by the party to whom the note was given, will not vary the case. See also Chambers v. Thompson's administrator, 1 Monroe's Rep. 115: So, in Wooldridge v. Cates, 2, J. J. Marshall's Rep. 222, a note was executed for money lost at gaming, and assigne d to a person ignorant of the transaction, for a valuable consideration. The assignee afterwards surrendered the note to the obligor and took from him a new note, payable to himself within twelve months: *Held*, that the new note was binding on the obligor, and that he could not be relieved in equity, from its payment. And in Chiles v. Coleman, 2 Bibb's Rep. 300; it was decided, that a bond for the conveyance of land given on a gaming consideration, imposed no duty on the obligor; but if for a valuable consideration, it comes into the hands of an innocent purchaser, and the obligor conveys to him, the consideration cannot be questioned by the obligor or his heirs.

Notwithstanding the generality of the terms employed in the act cited, we have seen that a Court of Equity will not avoid every contract which has its origin in a gaming transaction, but there are cases in which relief will not be afforded against a *bona fide* assignee or purchaser, who has paid a valuable consideration. It must be conceded, as the proof would seem to show, that Fenno's contract with Paulling, by which he acquired an assignment of Glover's bond, was intended to secure to him the money he had won of Paulling, and in that view, it was void, and being so, did not transfer a right paramount to the complainants mortgage. Nor did the execution of a deed by Glover, give him a better title. The complainants lien supposing it not to have been registered, could only have been divested by a subsequent purchaser or incumbrancer, in good faith and for a valuable consideration, without notice. The question then arises, can a *bona fide* purchaser for a valuable consideration, from Fenno, assert a right against the complai-

pants. Fenno's title, we have seen, was invalid, and the regis-
try of the complainants mortgage was no notice to one pur-
chasing the land, after Paulling relinquished the possession, so
that it must be wholly immaterial, whether that mortgage was
recorded before the contract between Paulling and Fenno was
made, if the former had ceased to occupy the land before Lea's
purchase or Cook & Kornegay's mortgage was executed.

Upon the hypothesis that Lea and Cook & Kornegay ac-
quired their interests in the lands in good faith and for a valua-
ble consideration; we think it clear that they cannot be preju-
diced by the invalidity of Fenno's title. Fenno was invested
with a regular legal title, evidenced by the usual writings, was
himself in possession, and there was no such registry of an in-
cumbrance as was constructive notice of its existence. This
being the case, one proposing to purchase, would very natu-
rally conclude that his title was unquestionable, and that a pur-
chaser under such circumstances, should be preferred to a se-
cret incumbrancer. It has accordingly been holden, that a de-
rivative purchaser without notice, cannot be affected by a no-
tice to him under whom he claims; and if he purchase with
notice, he may protect himself by the want of notice in his im-
mediate vendor. Lacy v. Wilson, 4 Munf. Rep. 313; Curtis v.
Lunn, 6 ibid 42; Lindsey v. Rankin, 4 Bibb's Rep. 482; Mc-
Nitt v. Logan, Litt. Sel. Cases, 69; Demarest v. Wynkoop, 3
Johns. Ch. Rep. 147; Cressey v. Phelps, 2 Root's Rep. 420;
Sugden on Vendors, 531.

Sugden says, "although a deed be merely voluntary or
fraudulent in its creation, and voidable by a purchaser, viz:
(would become void by a person purchasing the estate,) yet it
may become good by matter, ex post facto, as if a man make
a feoffment by covin, or without any valuable consideration,
and then the first feoffor enter and make a feoffment for a val-
uable consideration; the feoffee of the first feoffee shall hold
the lands, and not the feoffee of the first feoffor: for although
the estate of the first feoffee, was in its creation, covinous or
voluntary, and therefore voidable, yet when he enfeoffed a per-
son for valuable consideration, such person shall be preferred
before the last." Sugden on Vendors, 471.

Chancellor Kent, in Bumpass v. Platner, 1 Johns. Ch. Rep.
212, thus exemplifies the principle, "where A, gave a usurious

note to B, who sold it to C, for a valuable consideration, without notice of the usury, and A took up the note and gave a bond to C for the amount, it was held good." On the same principle he says, " a purchaser without notice from a fraudulent purchaser, is not affected by the fraud." See Cuthbert v. Haley, 8 T. Rep. 390; Coleman v. Cocke, 6 Rand. Rep. 618; Sweet v. Southcote, 2 Bro. Ch. Rep. 66; Lowther v. Carlton, 2 Atk. 139, 242; Jackson v. Henry, 10 Johns. Rep. 185; Garland v. Rives, 4 Rand. Rep. 282 ; Hagthorp, *et ux. et al.* v. Hook's admr's, 1 Gill & Johns. Rep. 270; Durell v. Haley, 1 Paige's Rep. 492; Vermonet v. Delaire, 2 Dess. Rep. 323; Jackson v. Anderson, 4 Wend. Rep. 474.

So it has been held, that chancery will not take the legal title from an innocent purchaser for a valuable consideration, to give it to one who has only an equitable estate. Benzien v. Lenoir, 1 Caro. L! Repo. 508; Dennison v. Robbinett, 2 H. & Johns. Rep. 55. In Frost v. Beekman, 1 Johns. Ch. Rep. 300, it was said to be " an established rule in equity, to give no assistance against a purchaser for a valuable consideration without notice:" see also Wallwyn v. Lee; 9 Ves. Rep. 24. And in Whittick v. Kane, 1 Paige's Rep. 202, it was adjudged that a *bona fide* purchaser without notice, who had actually paid the purchase money, could not be divested of the title to the premises, by showing, that although the deed under which his vendor claimed, was absolute on its face, yet it was intended as a mortgage. These citations will suffice to show that a purchase in *good faith and upon valuable consideration*, cannot be defeated; if the vendor had the legal title, by proof of an older title outstanding in a third person.

It was insisted by the plaintiffs in error, that it was not permissible for the complainants to adduce evidence to prove that the contract between Paulling and Fenno, was tainted with gaming; that Fenno being called on to disclose the entire transaction, his answer was conclusive, and could not be gainsayed. To sustain this argument, the act of 1812, is relied on. That statute, so far as pertinent, is as follows : " The Courts of Equity shall have jurisdiction in all cases of gambling consideration, so far as to sustain a bill for discovery; or to enjoin judgments at law." This statute does not confer upon our Courts of Chancery, the entire jurisdiction they possess, in cases of

gaming contracts; independent of legislation upon the subject, they may grant relief in such cases, upon a proper showing being made; Lyon v. Respass, 1 Litt. Rep. 135. But the obvious design of the act, was to increase the facilities for the loser of money, at an unlawful game, to avoid its payment. Previous to its passage, the winner could not be compelled to discover, in answer to a bill in equity, that a contract, the subject of litigation, was founded on a gaming consideration, when an affirmative response would subject him to a penalty, or a criminal prosecution: Story's Eq. Plead. 466, '7. To take from the winner, the right to refuse to answer, was one object of the statute. Anterior to the act, a party against whom a judgment was recovered, upon a contract, obnoxious to the law against gaming, was not entitled to go into equity, without showing some excuse for the failure to avail himself of a legal defence; to open the door of chancery, in such cases, although the opportunity of defending, at law, had been neglected, was the only additional end proposed by the statute.

The present, is not a bill for discovery, technically so called, as the plaintiffs in error have supposed; but it is a bill to foreclose a mortgage, and to adjust the superiority of the claims of the complainants and some of the defendants who set up an interest in the same property. In this view of the case, it was clearly allowable to adduce proof either to countradict or sustain the answer of Fenno.

It was objected, at the argument, that the answer of Lea, is not responsive to the bill, so far as it states a purchase by him in good faith, and on a valuable consideration, and being put in issue by a general replication, it should be supported by proof. In the stating part of their bill, the complainants say, "that they have been informed, that one Columbus W. Lea, claims some interest in some part of the said land. They will not allege, that the said Columbus W. Lea received the same on any usurious or gaming consideration; but, inasmuch as the said Fenno's transactions are characterised with usury and gaming, they will propose interrogatories to him in regard to the same." Further, "they state to your honor, the said Ben. Glover, Wm. K. Paulling, George W. Fenno, Cook & Kornegay, and Columbus W. Lea, all acted with full knowledge of your orators rights; that your orators caused their mortgage to

be recorded in the county of Perry, before any of the defendants rights attached:" upon this statement, interrogatories were proposed to Lea, as follows, " that the said Fenno and Lea may set forth their contract in regard to said lands, or any part thereof, when the same took place, the amount of money paid, or agreed to be paid by said Lea, whether any note or mortgage was executed by said Lea; the amount, date and time of payment of the same; whether part of the consideration was on any usurious or gaming consideration, and what—and that they may fully set forth every fact and circumstance in regard to the same."

It has been often held, that where an answer is responsive to the bill, and within the discovery sought, it is legal evidence in all cases. Woodcock v. Bennet, 1 Cow. Rep. 711; Johnson v. Pearson, Dev. Eq. Rep. 364; Hagthorp v. Hook's admr's, 1 G. & Johns. Rep. 270 ; Stafford v. Bryan, 3 Wend. Rep. 532; Hart v. Ten Eyck, 2 Johns. Ch. Rep. 92; Clark v. Van Reimsdyk, 9 Cranch's Rep. 153. The correctness of this rule is not disputed, but its application is denied as it respects the answer of Lea, because as it is said the stating part of the bill does not require him to disclose how, and upon what consideration he became the proprietor of a part of the land embraced by the complainants mortgage, although interrogatories are addressed to him calculated to elicit such a disclosure. It is well settled that the interrogating part of the bill must be founded on what precedes it, and that if there is nothing in the prior part of the bill to warrant a particular interrogatory the defendant is not compellable to answer it. But although the defendant is not bound to answer an interrogatory which does not grow out of the antecedent matter stated, or charged in the bill, yet if he does answer it, and the answer is replied to, the matter of the interrogatory is deemed to be put in issue, and the informality is cured. 1 Smith's Chancery, 84; Story's Eq. Plead 33; Mechanic's Bank v. Levy, 3 Paige's Rep. 606. The question then is, are the interrogatories proposed to Lea, warranted by the preceding part of the bill, so as to make his answer to them evidence. A variety of questions it is said may be founded on a single charge in the bill, if they are relevant to it. Thus, if there is a general charge, that money has been paid as the consideration of a contract, that general

charge will entitle the plaintiff to put all questions upon it, which are material to make out that it was paid, how, when, where, by whom, on what account, in what sums, &c. and it is not necessary to load the bill by adding to the general charge; that it was paid, all the circumstances in order to justify an interrogatory as to the circumstances. And if a bill is filed against an executor for an account of the personal estate of the testator, upon a single charge, that he has proved the will, every inquiry may be founded, which may be necessary to ascertain the amount of the estate, its value, the disposition made of it, the situation of any part remaining undisposed of, the debts of the testator, and any other circumstances leading to the account required. Story's Eq. Plead. 34 and cases there cited; Mechanic's Bank v. Levy, 3 Paige's Rep. 606. If the law be as we have stated it, (and it is well sustained by authority) the interrogatories proposed to Lea, were clearly authorised by the stating part of the bill, which required from him a disclosure of the nature of his claim, how, when and under what circumstances he acquired it. His answer then, so far as it alleges that he was a *bona fide* purchaser for a valuable consideration, without notice of the complainants equity, is responsive to the bill, and evidence of these facts, until disproved by overbalancing testimony. A replication, according to the English practice, does not destroy the effect of an answer as evidence, so far as it is responsive to the bill: but is intended merely to put in issue the facts stated in the answer, which are considered as irresponsive allegations.

The reservation of a greater rate of interest than eight per cent. upon the loan by Cook & Kornegay to Fenno, does not make their mortgage void as against the complainants. By the act of 1834, it is enacted, that where a higher rate of interest than *eight per cent.* shall be reserved by any contract for the loan of any money, wares, &c. the principal sum of money, or the value of the wares, &c. shall be recoverable, and the interest alone shall be forfeited.

There is then, no pretence for saying that Cook & Kornegay are not *bona fide* incumbrancers in equity, at least to the extent to which the act cited, recognizes their contract as valid. Besides, usury is an objection to a contract, personal to the party undertaking to pay it, or those who stand in his

place as his representatives. Jackson v. Henry, 10 Johns. Rep. 195; Edwards v. Dick, 4 B. & Ald. Rep. 212; Cook & Kornegay v. Dyer, at the present term. See French v. Shotwell, 20 Johns. Rep. 668.

In respect to the money and property paid by Fenno to Paulling, it is unnecessary to consider whether if the complainants were to subject the land to the payment of their demand, Fenno could recover of Paulling the amount of his advances; if he purchased without notice of the complainants lien, equity would not divest the title he had acquired, without a reimbursement of what he had paid in good faith, in order to obtain it. Fenno's claim for indemnity would not rest upon contract; but upon the broad basis of equity and moral justice. His equity would be equal to that of the complainants, and having a legal advantage, his lien for money and property actually advanced would be preferred to their's.

If however, the money paid by Lea, upon the footing of his purchase and the loan made by Cook & Kornegay, amount to a larger sum than the money, &c. advanced by Fenno, these must go in satisfaction of such advance, and extinguish his right to be paid any thing from the proceeds beyond what he has already received; leaving the rights of Lea and Cook & Kornegy to be settled according to the principles we have laid down. We have not thought it necessary particularly to consider, whether the demand of the complainants was sufficiently established, the proof to that point being entirely satisfactory to show the *indebtedness of Paulling to them.*

It results from what we have said, that the Chancellor erred in adjudging that the mortgage of the complainants was entitled to be satisfied, in preference to that of Cook & Kornegay, and that the sale to Lea, was invalid as against the complainants. But a final decree cannot be here rendered, for the want of a master's report, showing the amount of money and property paid by Fenno to Paulling, or his order, the sum lent by Cook & Kornegay to Fenno, the payments thereon, and amount now due. That this cause may be determined according to the principles of this opinion, the decree of the Court of Chancery is reversed, and the cause remanded.