## MANNING v. MANNNING, ET AL.

1. A note, or other security, given in consideration of money won at gaming, is void in the hands of an innocent holder, for a valuable consideration, unless he was induced to take it, by the representations of the maker.

2. The payee of a gaming note, who has transferred it to another, is a competent witness for the maker, and may be compelled to testify as to the consideration of the note, upon a bill in Chancery, filed by the maker against the indorsee.

3. Whether his testimony could be used against him, as an admission, upon a criminal prosecution for gaming—*Quere?*

4. Where the allegations of the bill were, that the indorsee of a note, knew when he obtained it, that it was made upon a gaming consideration, and he is called on by an interrogatory, to state under what circumstances the same was assigned to him, his answer, that before the note was indorsed to him, the maker informed him, *it was good, and he had no off sets against it*, is not responsive to the bill.

Error to the Chancery Court of Madison.

The bill was filed by James Manning, who alledges, that he left his signatures on blank sheets of paper, with Robert J. Manning, with the distinct understanding, that they should be used only in business transactions; that on the 11th October, 1839, by writing his own name, and the form of a note, over one of these signatures, R. J. Manning made the joint note of himself and complainant, negotiable and payable at the Branch Bank at Decatur, for $1,900, payable twenty-four months after date, to defendant, Blevins, who indorsed it to Kavanaugh, by whom it was indors-

ed to Turner, who obtained a judgment on the note, against R. J. and James Manning, in the Circuit Court of Madison, by default. That R. J. Manning has left the State, and gone to Texas. That the note was executed to Blevins upon a gaming consideration, to which the complainant gave no consent, and of which he had no knowledge. That he is informed, and believes it to be true, that Kavanaugh and Turner, at the time they respectively became the assignees of the note, knew that it was founded solely on a gaming consideration. That from an inspection of the note, it appears, there was once a credit of one thousand dollars upon it, which has since been partially erased, but is still legible. The prayer of the bill is, that all these parties be made defendants, and answers thereto be required to make, &c., &c. "Your orator calls on each of the parties to state the consideration of said note, according to his knowledge, information, and belief. Let said Kavanaugh and Turner each state, for what consideration, and under what circumstances the same was assigned to him, and let them all state how the credit came to be erased."

Blevins denies knowing any of the matters in relation to the note, between complainant and R. J. Manning; admits he received the note from the latter, in consideration of money won from him at cards. That he assigned the note to Turner, (having procured Kavanaugh to indorse it for his accommodation,) in the purchase of a race horse and two hundred dollars; does not know that Turner, or Kavanaugh, knew of the consideration of the note.

Kavanaugh admits he indorsed the note for the accommodation of Blevins; did not know any thing about the consideration.

Turner admits the purchase of the note from Blevins, in the fall of 1839, for his interest in the race horse Bustamente, and two hundred dollars in addition, which he has paid. "That before he received said note, he asked the complainant if he had any off sets, and told him he was about trading for the note. That complainant informed him he had no off sets, and the note was a good one," and thereupon he took the note; and that after he received the note, he again informed complainant of it. That he knows of no gaming between Blevins and R. J. Manning, so far as this note is concerned; nor did he suspect that such was the case, when he purchased said note, nor did he ever hear that the note was given for money won at cards, until the filing of the bill. The credit up-

on the note was indorsed in consideration of a bet, won by R. J. Manning of him, and one J. R. Acklin, on the Presidential election, which he entered witout consulting the parties, and that R. J. Manning, being indebted to Acklin in a larger amount the latter agreed to receive payment from Acklin, of the bet which he had won.

In an amended answer, he states that he purchased without any knowledge of the illegal consideration of the note; "that he had neither knowledge, information, or belief of it, at any time, at and before the time, when he purchased and paid for it. He never knew, or heard, or suspected any thing of the kind, until long after all this, and does not now know, or admit it."

An order was made to take the deposition of Blevins, subject to any exception to his competency, and also whether he was compelled to testify. In his deposition, he states, that the note was executed to him by R. J. Manning, for money won at cards. Other testimony was taken not necessary to be recited.

The Chancellor, considering the answer of Turner, stating that he applied to the complainant for information about the note, before he traded for it, responsive to the bill, and also considering, that Blevins was not a competent witness, dismissed the bill.

From this decree an appeal was taken to this Court.

McClung and A. R. Manning, for plaintiff in error. The ground upon which the Chancellor suppressed the deposition of Blevins, is clearly untenable. The decision in Walton v. Shelly, 1 Term. 296, upon which he relied, has been long since overruled in England, 7 Term, 601, and also in this Court, 9 Porter, 225; id. 406; 3 Ala. Rep. 93; 5 id. 385.

Nor can he withhold his testimony, from fear of criminating himself, as the statute compels him to make a discovery. [Clay's Dig. 350; 3 Ala. Rep. 477.] But in this case, the statute of limitations had operated a bar before the testimony was taken.

Turner, in effect, admits that the note was founded on a gaming consideration, Blevins proves it, and the statute declares it void; it is so, therefore in the hands of an innocent holder, for value. [Chitty on Bills, 111; 2 Dana, 414; 7 Porter, 256; 5 Ala. Rep. 353; id. 708.]

The answer of Turner, stating that the complainant informed him that there was no objection to the note, and that he took it up-

on the faith of such representation, is incredible, and wholly inconsistent, with the admitted facts of the case, but if entitled to credit, it is not responsive to the bill, or to any allegation, or interrogatory contained in it, and was therefore not testimony for him. The interrogatory under which it is supposed this part of the answer is responsive, merely calls on him to state the attending circumstances, which is nothing more than he would have been required to do if there had been no such interrogatory. The effect and meaning of the interrogatory, must be ascertained by the stating part of the bill, which is wholly silent as to any such conversation. [Cooper's Eq. 11, 12; Story's Eq. P. §§ 35, 36, 38.]

If this were not so, there could be no recovery on the note, as that is utterly void, but in an action upon the misrepresentation. [1 Porter, 57.]

The counsel also cited, Douglass, 736; 2 B. & A. 590; 8 Price, 288; 2 Str. 1153; Bayley on Bills, 237; 5 Ala. Rep. 334.

S. Parsons, contra. Conceding that this note would be void, in the hands of an innocent holder, for value, without notice, the holder must recover in this case, because he took the note on the representation of the complainant, that there was no defence to it; and although the note in its inception might have been void, the new consideration upon which it was taken, would be sufficient to sustain an action upon it, against such party, whether the maker, or a third person. [Chitty on Bills, App. 816; 2 Starkie's Rep. 232; 1 Camp. 165; 4 B. & A. 212; 6 Bingham, 109; 2 Starkie Ev. 28-9; 16 Mass. 397; 12 id. 281; 5 id. 201; 2 Starkie Rep. 90.]

An examination of the bill, will fully satisfy the Court, that the answer of Turner was responsive to the bill.

The statute giving Chancery jurisdiction, was not intended to uproot all the rules of a Court of Equity, and where it would be inequitable to grant relief, the statute does not apply. Upon a statute similar to ours, in England, against gaming, the Courts refused to set aside a judgment, upon a power of attorney made to secure a gaming debt, when the party making it had declared to the purchaser that it was valid. [1 B. & Adol. 142; see also, 3 Ala. Rep. 458.] He who seeks equity, must do equity, that is,

must act justly ; and certainly nothing can be more unjust, than such a defence.

Blevins was not a competent witness.   The admissions of a vendor, after a sale, are not evidence against the purchaser.   [1 Smith C. P. 340.]   He was also incompetent from interest, and because he was a party upon the record, interested in the event, as the decree would be evidence, as between him and Turner, his indorsee, for a valuable consideration.   [1 Gressly's Eq. 243; 2 Starkie Ev., 1 ed., 392 ; 3 Johns. C. 371, 612 ; 3 Atkins, 401; 1 Johns. Rep. 518.]

ORMOND, J.—The object of this bill is, to obtain relief against the payment of a note, upon the ground, that it was executed upon the consideration of money won at cards.   The decree is sought upon two statutes of this State.   One, passed in 1807, declares, that "all promises, agreements, notes, bills, bonds, or other contract, judgment, &c., made, &c., upon any gaming consideration, shall be utterly void and of no effect, to all intents and purposes whatsoever." [Clay's Dig. 257, § 1.]   And in 1812, it was enacted, that " the Courts of Equity shall have jurisdiction in all cases of gambling consideration, so far as to sustain a bill for a discovery, or to enjoin judgments at law." [Ib. 350, § 28.]

Upon the construction of this last act, it has been held by this Court, that to give Chancery jurisdiction, it was not necessary to assign any reason for not making defence at law, the design of the legislature being to extirpate the evil practice of gaming, and to afford every possible facility for putting it down.   [Cheatham v. Young, 5 Ala. R. 353.] In confirmation of this view, it may be stated, that the legislature have since declared, that money actually paid, may be recovered back by the loser.   So in Fenno v. Sayre & Converse, 3 Ala. Rep. 458, it was held, that one object of the statute, was to compel the winner to answer, which, but for this statute, he might have refused, from his liability to a public prosecution.

As it respects the act first cited, it has never been necessary, hitherto, for this Court to determine its effect, in regard to the rights of an innocent holder, for a valuable consideration, of a security given for money won at play ; but we entertain no doubt whatever, that it is utterly void.   The statute, in effect declares,

that it never had a legal existence, and makes it "utterly void, and of no effect, to all intents and purposes whatsoever." And, indeed, if such were not the true construction of the statute, it would, in effect, be a dead letter, as such securities, would always be found in the hands of *innocent holders*, for value.

Such is the uniform tenor of the English decisions upon the statute of 9 Anne, c. 14 ; see the cases cited on the brief, and the authorities cited in the notes to Chitty on Bills, 9 Am. ed. 111, which in its terms is precisely equivalent to ours.

The same conclusion has been attained, in regard to a note tainted with usury. [Metcalf v. Watkins, 1 Porter, 57.] Although, therefore, the bill alledges, that Turner, the holder, knew that the note was executed for a gaming consideration, when he received it, it is wholly immaterial and need not be proved ; the only question upon this part of the case, is, whether the note is, in fact, a security given upon a gaming consideration.

We decline entering upon the consideration of the effect of the answer of Turner, as to this point of the case, because the consideration of the note is proven by Blevins, to have been money won at cards. This testimony was rejected by the Chancellor, because it was against public policy, to permit a party to a negotiable security to impeach its consideration. This doctrine, first asserted in Walton v. Shelly, 1 Term Rep. 296, has been long exploded in England, and never was recognised in this Court, but the opposite opinion asserted, in numerous cases, to be found in our books, and cited by the plaintiff's counsel.

It is now further argued, that he was interested in the event of the suit, as a decree founded upon the illegal consideration of the note, would render him liable over to his indorsee. Conceding such to be the fact, he was clearly competent to testify against his interest, which was the attitude in which he was placed, by being called by the plaintiff in error.

The witness objected to testifying, and his testimony was taken subject to all exceptions ; it is now insisted, that he could not be compelled to testify. The State, as already observed, requires a party in the predicament of the witness, to answer, and thus to give evidence against himself, and no reason is perceived why he should be excused from testifying, when he has transferred his interest to another. If that should be the construction of the statute, nothing would be easier than to evade it. No question as

to his liability to a criminal prosecution arises in this case, from this admission, not only because he had admitted the same fact previously, in his answer to the bill, but also, because the statute of limitations had created a bar to a criminal prosecution, before he was called on to give evidence. Whether in any case, the testimony thus compulsorily drawn from a witness, could be used against him upon a criminal proceeding, we need not inquire at this time.

We now approach the only point of difficulty in the case—the fact disclosed in the answer of Turner, that he took the assignment of the note, upon the assurance of the plaintiff in error, that it was valid; and if so, whether the answer is, as to this fact, responsive to the bill, and to be considered evidence in the cause.

Whatever may be the rule at law, we are satisfied, that in equity, the maker of a gaming security cannot have relief against an innocent holder, whom he has induced by his promise of payment, or by an assurance, that the note was valid, to invest his money in its purchase. To this effect are the cases of Beverly v. Smith, 1 Wash. 297, and Hoomes v. Smock, id. 390, upon the principle, that it would be a fraud upon the purchaser, to permit such a defence to be made. It is therefore necessary to inquire, whether the answer is, in this respect, responsive to any allegation of the bill. The defendants are called on to state the consideration of the note, and each is required to state, " *under what circumstances the same was assigned to him.*"

The interrogating part of the bill, is not absolutely necessary ; its whole design seems to be, to point more specially to the charges, and thus to sift the conscience of the defendant. Special interrogatories, when introduced into a bill, must be founded on, and authorized by, the stating part of it, or they may be disregarded by the defendant; although, if answered, and replied to, the matter is put in issue. [Fenno v. Sayre & Converse, 3 Ala. Rep. 477 ; Coop. Eq. P. 11.] It is obvious, however, that where the import of an interrogatory is doubtful, its true interpretation must be sought in the stating part of the bill.

In the stating part of the bill, no fact is alleged from which it can be inferred, that the complainant had any knowledge whatever, of the facts relating to the assignment of the note. On the contrary, he professes utter ignorance of them. The leading idea

which pervades the bill, is, that both Turner and Kavanaugh successive assignees of the note, knew when they obtained it, or at least had reason to believe, that the consideration was illegal. This is expressly charged in the bill, and the interrogatory framed upon it, is to state the circumstances attending the assignment, which indeed, is no more than would have been their duty, if no such interrogatory had been inserted in the bill. The design doubtless was, to get at some fact, or circumstance, showing a knowledge of the consideration of the note, which appears to have been supposed necessary.

The alledged conversation between the complainant, and Turner, is not a circumstance attending the assignment of the note, or connected with it. It is evidently matter in avoidance, not in the slightest degree hinted at in the bill. It is the defence of the defendant, wholly distinct and separate from the case made by the bill, and interrogatory, and which, to be available to him, must be proved by him. This could not naturally have found its way into the bill, and cannot be derived from the general interrogatory above cited, which is founded on, and has reference to, a distinct matter. See the case of Marshall v. the Huntsville Bank, 4 Ala. Rep. 60, and Cummings & Cooper v. McCullough, 5 Ala. Rep. 333, where this subject is quite fully considered.

The allegations of the bill, as to the manner in which the complainant became a party to the note, are not denied, and although not proved, must be considered as true, as they cannot be explained upon any other hypothesis. It is not pretended by Blevins, or any of the defendants, that the complainant was present when the note was executed. Yet we find that it was made payable directly to Blevins, thus showing very conclusively, that it must have existed in a blank form previous to that time. It could not be evidence of a debt from complainant to R. J. Manning, because both parties appear as makers; nor could it be a debt due jointly by them, to some third person, because, in that event, Blevins could not appear as the payee. The allegations of the bill on this point, are entirely consistent with the admitted facts, and must therefore be considered as true. It is, however, unimportant, whether the complainant did, or did not know of the illegal consideration, as the statute vitiates the note, in the hands of an innocent holder, for value. The defence set up in the answer, that the defendant, Turner, was induced to take the note, by the

representations of the complainant, that it was good, not being proved, it follows, that the complainant is entitled to the relief he seeks by his bill. The decree of the Chancellor must therefore be reversed, and a decree be here rendered, perpetuating the injunction.