## GIVENS, use, &c. v. ROGERS, et al.

1. A promise in writing by one to pay double the value of a wagon and harness, which was delivered to him, in the event that James K. Polk was elected President of the United States over Henry Clay, in 1844, is a wager prohibited by the act forbidding betting on elections in this State, and cannot be recovered.

2. One taking such a note, on the admission of the maker that it was good, and he would pay it, cannot recover, because the note itself disclosed the illegality of the consideration.

3. In a suit on such a note, against the maker and his sureties, a recovery cannot be had on the common counts, the wagon not being in the possession of the sureties.

Writ of Error to the Circuit Court of Talladega..

THE suit was commenced before a justice, by the plaintiff in error, on five bonds for $44 each, by which the defendant in error promised to pay the plaintiff $44 when James K. Polk should be elected President of the United States, over Henry Clay, in 1844. The justice rendered judgment in each case in favor of the plaintiff, from which an appeal was

taken to the circuit court, where the cases were consolidated.

The plaintiff filed a declaration consisting of several counts, in which it was averred that James K. Polk was elected President of the United States, in 1844, over Henry Clay, and a common count for the sale of goods, wares, and merchandize, &c.

The parties agreed upon the following facts: That the notes were executed by Rogers as principal, and the other parties as his sureties, for a wagon and harness, proved to be worth $125. That the wagon and harness were seen in the possession of Rogers, and Maberly, after November, 1844, and ever since, and that Ware assisted Rogers in receiving them out of the possession of plaintiff. Rogers told an agent of the plaintiff, who was sent to him with the notes, that they were good, and he would pay them. This was after the notes were due, and the promise of Rogers was communicated to Cunningham & Dixon, for whose use the suit is brought.

Upon this state of facts the court rendered judgment for the defendant. This is now assigned as error.

S. F. RICE, for the plaintiff in error.

1. Notes given "for a wagon and harness, proved to be worth one hundred and twenty-five dollars," sold *and delivered* to the principal maker of the notes, are valid. And the mere fact that such notes are given in October, 1844, and made payable when James K. Polk should be elected Presideet of the United States, over Henry Clay, in 1844, will not invalidate the notes. The *consideration* is not illegal.— [Wright v. McAlexander, at the present term, and cases therein cited.]

2. The only possible objection that could be made against the validity of such notes, is, they are wagers upon " an election in this State." The decisive test of the soundness of this objection is, could an indictment for betting on an "election in this State," be maintained upon the facts above disclosed in connection with the notes?

3. If four persons obtain the property of another, by giv-

Givens v. Rogers, et al.

ing notes which are void; yet if they keep and use the property, and after having thus kept and used it for a considerable time, promise to pay the notes, and thereupon are still permitted to keep and use the property, such promise will give validity to the transaction, because made on sufficient consideration, to wit, the continued use of the property.— [Stover v. Herrington, 7 Ala. R. 151; Evans v. Keeland, 9 Ib. 42; Kennon v. McRae, 1 Ib. 295.]

4. If such promise is communicated to third persons, who thereupon purchase the notes, the parties to the notes are estopped from insisting that they are not liable on such notes or such promise. [McRae v. Kennon, 1 Ala. R. 295.]

5. Whenever trover will lie, assumpsit may be maintained. And if the notes are void, the facts agreed show a conversion of plaintiff's property by defendants, and the value of the property. [Powell v. Olds, 9 Ala. R. 861.]

6. Conceding (for argument sake) that the *loser* cannot recover back property lost at gaming, yet that is not this case. If there is a bet, it is the *winner* here suing for the value of property of which he has been illegally deprived—deprived by *false pretences.* And he may recover it back, or its value. [Cope v. Williams, 4 Ala. R. 264.]

7. The case is even stronger than that. It is the *bona fide* transferees of the winner, here asking justice, upon the additional ground that they have been induced to become such transferees by the verbal promise of defendants, made "*after the notes were due,*" to pay the notes.

W. P. CHILTON, for the defendants.

1. The contract sought to be recovered upon, is a wager upon the Presidential election, and the fact is clearly stamped upon the face of the notes. Aside from the notes, the proof declares that Rogers, who is the principal in the notes, agreed to pay double price for a wagon if Mr. Polk was elected President in 1844, and was to have the wagon for nothing, if he was not elected. Being a wager, this court will not enforce it, because—1. Such betting is expressly prohibited by our statute, and a contract founded on an act prohibited by statute is void. [Clay's Dig. 435, § 23; O'Donnell, et

69

al. v. Sweeney, 467; Tindall v. Childress & May, 2 S. & P. 250; Roberts v. Taylor, 7 Por. 251; Wood v. Duncan, 9 Ib. 227; Barker v. Callehan. 5 Ala. R. 708; Wheeler v. Russel, 17 Mass. R. 258.]

2. But if not void for the reason above assigned, the contract is against public policy, as its direct tendency is to corrupt the ballot box, the purity of which is one of the best safeguards for the perpetuity of our free institutions. [McAllister v. Hoffman, 16 Serg. & R. 147; Story on Con. 128, § 200; 4 Johns. R· 425.]

3. The sureties not being bound on the note, cannot be charged by any admissions the principal may have made concerning it.

4. The action being against several, who are not sued as partners, plaintiff must recover against all or none.

ORMOND, J.—The principal question in the cause is, whether the contract here sought to be enforced, is a wager, within the statute of this State prohibiting betting on elections. The act declares, that "every person who shall hereafter make any bet, or wager of money, or other thing of value, upon any election in this State, shall be deemed guilty of a misdemeanor," &c. [Clay's Dig. 435, § 23.] It is contended that a bet upon the Presidential election is not an election in this State, within the meaning of the act. The election of President, is certainly an election in this State, unless the fact that the election is held for that officer in all the other States of the Union, prevents it from being an election held in this; but as the greater must include the less, this proposition is manifestly untenable. It is then literally, and in the most restricted sense which can be applied to the terms employed, an election within this State.

If however, we abandon the literal interpretation, and with a view to ascertain the meaning of the terms employed, look at the mischief intended to be prevented, no doubt whatever can remain of the sense of the expressions employed. The object was to preserve the purity of the ballot box, by preventing improper influences from being brought to bear upon the electors, who should cast their votes from high considerations of public duty, without regard to the private in-

terest of any one. The practice of betting at elections, by substituting private, for the public interest, is not only well calculated to mislead the judgment of the actors engaged in it, but exposes others to improper solicitation, and mixes up with the natural elements of party strife inseparable from a popular election in a country like ours, the unnatural stimulant of private interest. It is therefore undeniable, that such a practice is hostile to the purity of the elective franchise. Such being the motive for the passage of the act, what possible inducement could be presented to the mind of the legislature for confining the law to elections for State officers, and to legalize this pernicious practice in the most important election known to our institutions? We can conceive of none, and think therefore that there is no reason for restraining the terms employed, and giving them a narrower meaning, than they import in their natural, and proper acceptation.

Having ascertained that a wager upon the Presidential election is within the letter, ae well as the intention of the law, we proceed to consider whether the facts agreed in this case, establish that such a bet was made. We consider it perfectly clear, that the facts agreed do establish, that the parties made a bet, upon the result of the Presidential election, in which the plaintiff staked his wagon, against the promise of the defendant to pay about double its value, if he lost the wager; and as the wagon was delivered to the defendant, it is precisely the same as if the wagon on one side, and its value on the other, had been placed in the hands of a stakeholder, to abide the result. But it is insisted that as the intention of the parties to violate the law, is not admitted, this court cannot know that such a violation was intended. The facts being admitted, whether they amount to a bet on the Presidendential election, is matter of law, and being ascertained to be a wager prohibited by law, the intent is inferable from the act itself, as every one is presumed to intend the necessary consequonce of his acts. It can make no difference that it assumes in this case the form of a contract, it is nevertheless both in its form, and essence, a wager, prohibited by law, and is void.

If this contract was not void for this cause, it would be

so on the ground that it was contrary to public policy, to en_fore a contract, the direct and inevitable tendency of which is, to contaminate the elective franchise. See the cases referred to on the brief of the defendant in error.

It is urged, that conceding the act to be a wager, yet the notes by which it was evidenced, were taken by the persons for whose use the suit is brought, on the faith of the assurance of Rogers, that they would be paid. It has been held that if an innocent man is induced by the promise of the maker of a gaming security to take it, he will not be permitted afterwards to take advantage of the illegality of the instrument. [Beverly v. Smith, 1 Wash. 296 ; Hoomes v. Smock, Id. 390.] Those are cases, where the assignee was ignorant of the illegality of the instrument, and was induced to invest his money in it, by the promise of the maker. Here the illegality of the promise was apparent on its face, the purchaser therefore could not be an innocent holder. Nor if this promise was available against Rogers, the principal, would it avail against the sureties, who are sued jointly with him, and who it is not pretended, have by their promise induced the purchase of the note

It is also insisted, that if there can be no recovery on the note, the value of the wagon and harness may be recovered upon the common count in assumpsit.

Conceding that upon the conversion of this wagon and harness, an action would lie against the person converting it, either of trover or assumpsit, it is manifest no such recovery can be had in this action, as it is not shown that the wagon has ever come to the possession of these sureties. The actisn being against all the defendants upon a contract, the recovery must be against all or none.

Judgment affirmed.