## FINN AND DULANEY v. BARCLAY ET AL.

1. A promise by the maker, to pay a note founded on a gaming consideration, to the holder, *after* he had acquired it, with knowledge of *its* illegality, will not enable him to recover upon it, although after such promise, the holder released a debt due from another person to him, to secure which he had previously received the note.
2. The maker of a note, given upon a gaming consideration, is entitled to be relieved in chancery against its payment, without offering to return the money, or other thing, received when the note was executed.

Error to the Chancery Court of Talladega. Before the Hon. D. G. Ligon, Chancellor.

THE bill in this case, filed by the plaintiffs in error, alleges that on the 23d September, 1844, they executed a note to Joseph N. Savery, one of the defendants, for $160, payable on the 4th day of March, 1845, provided James K. Polk, of Tennessee, should be elected to the presidency of the United States previous to that date, &c: that Finn was the principal, and Dulaney his security, in said note, and that at the time said note was given, Savery sold said Finn a horse worth $80, for which said Finn gave the note of $160, subject to the above recited condition. The bill charges, that

the transaction was intended between the parties as a wager on the presidential election of 1844: that suit was instituted on said note after its maturity in the name of Savery, for the use of Hugh G. Barclay, and that judgment has been rendered on said note against the plaintiff by default, upon which execution has issued, and been levied on property of Dulaney, &c. Savery and Barclay are made parties defendant to the bill, and a perpetual injunction of the judgment is prayed.

The defendants answered the bill separately. Savery admits all the allegations, and avers the transfer of the note by him to one Rice by delivery, for value received, and the promise of plaintiffs to said Rice, after the transfer, to pay him said note. Barclay disclaims all knowledge of the consideration of said note, and of the circumstances under which it was given, and avers, that some time after the presidential election was over, the note was offered for sale to him by the holder, but that he declined having any thing to do with it, until he saw the plaintiffs, who informed him that they would make no defence to the note, but would pay it, and that he thereupon took the note from said Rice, as collateral security for a note due him by Rice. He further avers, that after the rendition of the judgment, and issuance of execution thereon, he granted indulgence to plaintiffs on their solicitation and assurance, that they would pay the debt, and that relying on these assurances, he then gave up his note to said Rice, and took said judgment as absolute payment of the debt due him by Rice.

The facts stated in the bill and answers are substantially made out by the proofs.

The chancellor dismissed the bill, which is now assigned as error.

L. E. Parsons and J. T. Morgan, for plaintiffs in error.

1. " Where an instrument is absolutely void in its creation, it cannot be made valid by any subsequent transaction immediately arising out of it." Woodson et al. v. Barrett & Co. 2 Hen. & Mun. 88; Ivey v. Nicks, 14 Ala. 564; Givens v. Rogers, 11 ib. 543; ib. 656; 10 ib. 316; Manning v. Manning, 8 Ala. R. 138; Saltmarsh v. Tuthill, 13 ib. 390.

" The circulation of gaming bonds is an evil no less to be discountenanced, than the giving of them. And no means are more likely to prevent the giving of them, than to put an effectual stop to their circulation." Woodson et al. v. Barrett & Co. 2 H. & M. 88.

2. Barclay entered into this transaction with a full knowledge of the fact that the note was void, because it was in violation of the laws of the land. How can he be called an innocent holder? Barclay gave value for it, with this knowledge. So did Savery give value, in part, viz., his horse, yet he cannot enforce it. Wherein is Barclay entitled to the aid of a court of equity, if Savery is not?

S. F. RICE, contra.

1. The defence of gaming consideration is intended as a shield, not as a sword.

2. If a judgment by default, founded on a note void for gaming consideration, " be purchased on the faith of a promise, by the maker, to pay it, he will be compelled to pay the assignee at all events, on the ground of a contract, of which the purchase of the judgment would be a sufficient consideration." Clements v. Loggins, 2 Ala. Rep. 514; Manning v. Manning, 8 Ala. Rep. 144.

3. If, after a judgment is thus purchased, on the faith of the defendant's promise, the defendant becomes the actor in a court of equity, and asks that court to lend him its aid to defraud and despoil the purchaser of the judgment, by a perpetual injunction, such a prayer cannot be granted—especially, under such circumstances as are disclosed in this case. In equity and conscience, such defendant is bound to pay the judgment to the purchaser; and to aid him in the relief he seeks, " would be to become accessory to the commission by him of a fraud." Reynolds v. Dothard, 11 Ala. R. 534.

4. The complainants in this case, do not merely ask the court to relieve them from a judgment founded on a gaming consideration. They ask a great deal more—that the court will protect them in the enjoyment of the horse obtained from Savery, and help them to entail as a loss upon Barclay, the full price which he paid for the judgment, upon the faith of their promise.

5. In such a case as this, "a knowledge of the whole transaction by the party (Barclay) to whom the new promise was made, will not vary the case;" because, upon the faith of complainant's admissions, that they would waive all their defence and pay, Barclay changed his condition, and parted with his property.   Such admissions are always held as conclusive, and as matter of estoppel, because they have been "acted upon."   Fenno v. Sayre, Converse & Co. 3 Ala. R. 474, and the cases there cited from the Kentucky Reports, and approved by this court; 1 Greenl. Ev. § 27.

6. The decisions relied on for plaintiffs in error, are decisions in the courts of law, or in cases where no new contract or consideration existed—where no admissions had been acted upon by a third person, &c.   These decisions do not apply to this cause, which is in a court of equity, and in which the parties setting up the defence of gaming, have been guilty of bad faith, and are the actors.

DARGAN, J.—A note, or other security, given on a gaiming consideration, is void under our statute, even in the hands of a *bona fide* holder, Manning v. Manning, 8 Ala. 138.   The note on which the judgment was rendered, was void in the hands of the payee, and equally so when it came to the hands of Barclay.   But it is contended, that Barclay should be protected, for the reason, that after he had received it from Rice, as collateral security, to secure a debt due from Rice to him, the makers promised him that they would pay it, and would not take advantage of the illegality of the consideration, and in consequence of this promise, he had released the debt, due by Rice to him, to secure which, he had previously received the note.

If the maker of the note, induce one to purchase it of the payee, and he who was induced to part with his money, or property, in payment of the note, was ignorant of the consideration, the maker is estopped from alleging against the purchaser, that the note was founded on a gaming consideration. Benerly v. Smith, 1 Wash. 297; 8 Ala. Rep. 138.

This is not, however, the condition of Barclay.   The note showed on its face that it was given on a gaming consideration.   He acquired it as a collateral security from Rice, who

had obtained it from Savery. Neither Rice nor Barclay, had been induced to take the note by the makers; nor did they part with any thing valuable for the note, at their request.

But after Barclay had obtained the note as collateral securi-ty, the makers promised payment. Barclay says, that rely-ing on this promise, he released to Rice, the debt to secure which the note was received. It does not appear, however, that the makers of the note even knew upon what consider-ation Barclay obtained the note, nor did they request him to release, or give up any right he had on Rice. But the release of the debt from Rice, was a mere voluntary act, without any request of the makers. Barclay is not, therefore, a *bona fide* holder, nor has he departed with any right at the request of the makers. He stands, therefore, in the same situation that Savery, the payee, occupies, and can claim no further protection from the same, than the payee could.

The note was given for a horse, worth eighty dollars, con-ditioned to be paid when James K. Polk should be elected president of the United States; the amount of the note being one hundred and sixty dollars. It is clear from the record, that the whole transaction was a mere wager, on the presi-dential election, and the security given, void. Givens' v. Rogers, 11 Ala. Rep. 543; ib. 656. But as the parties per-mitted judgment to go against them at law, and never filed their bill to obtain an injunction, but do not offer to return the horse, or to account for his value, the question is, ought a court of equity to interfere, and afford relief. It is very clear, that a court of equity acting upon the general rules that gov-ern in such cases, would not interfere at all after a judgment at law, unless the defendant was prevented from making his defence, without negligence, or fault on his part. And if he applied to equity for relief, before judgment had been obtain-ed, he would be required, before he received relief from the chancellor, to do equity, and therefore his bill should con-tain an offer on his part, to do what the chancellor should ad-judge equitable. It is this offer of the complainant, that gives the court the authority to decree against the complain-ant, the amount actually and in good conscience due; and therefore this court will not interfere in his behalf, unless the complainant will, by his bill, enable the court to do complete justice. Branch Bank at Mobile v. Strother, at this term.

Finn and Dulaney v. Barclay et al.

The bill, however, in this case, contains no offer to return the horse, nor to pay his value; and if it can be sustained at all, it must be by our statute, that declares all gaming contracts void, and gives jurisdiction to our courts of chancery, so far as to sustain bills of discovery, and to enjoin judgments at law, founded on gaming securities.

The act of 1807, Clay's Dig. 257, declares all promises, agreements, notes, bills, bonds, or other contracts, judgments, mortgages, and other securities, where the whole, or any part of the consideration thereof shall be founded on a gaming consideration, to be utterly null and void.   See Givens v. Rogers et al. 11 Ala. 543 ; Trammel & McCarty v. Gordon, 11 ib. 656 ; 8 ib. 138.   By the act of 1812, Clay's Dig. 350, it is enacted, " that courts of equity shall have jurisdiction of all cases of gambling consideration, so far as to sustain bills of discovery, and to enjoin judgments at law. Under this last act, a court of equity is bound to entertain a bill, seeking to enjoin a judgment at law, which has been rendered on a security given for a gaming consideration, although the complainant could have defended himself at law, but did not do so.   Manning v. Manning, 8 Ala. 138 ; Cheatham v. Young, 5 ib. 353 ; Fenno v. Sayre & Converse, 3 ib. 458.   Being bound then to take jurisdiction, because the judgment is founded on a gaming consideration, how far are we bound to afford relief by the statute of 1807, when the complainants do not offer to do equity ?   This act declares void, all contracts, of whatever kind, or nature, where the whole, or any part, is founded on a gaming consideration. Being compelled by the act of 1812, to take cognizance of the bill, we are compelled to declare the contract, and the judgment thereon rendered, null and void; and we cannot decline to take jurisdiction, because the complainants do not offer to restore the horse received from Savery, the title to which he has never legally parted with.   We must therefore reverse the decree of the chancellor, and here render the decree he should have rendered, on the bill, answer and proof, perpetually enjoining the judgment at law.   It is further ordered, and decreed, that the defendants in error pay the cost of this court, and also the cost of the court below.