# Kuhl *v.* M. Gally Universal Press Co.

*Bill in Equity to foreclose Mortgage*

1. *Sale of slot machine; when void under statute prohibiting gambling contract.*—Where in the sale of slot machines to be used as gambling devices, the vendor actively participates in the promotion of the illegal use of such machines, and his services in this respect form a material inducement to the purchaser to buy such machines, the contract of sale is void under the statute which declares that "all contracts founded in whole or in part on a gambling consideration are void," (Code, § 2163); and, therefore, notes given for the purchase price of the machine under such contract of sale, are void and not enforceable, even in the hands of an innocent holder for value.

2. *Gambling contract; renewal notes invalid.*—Where notes secured by a mortgage and given in consideration of a gambling contract are subsequently surrendered and new notes secured by a mortgage are given to the holder of the original notes, in the place of those surrendered, the taint of illegality existing in the first notes and mortgage infects those subsequently given, and the last notes and mortgage are subject to the same defense as could have been interposed to the first.

3. *Equity jurisdiction; relief against gambling contract can be granted on cross bill.*—Under the provisions of the statute which extend the jurisdiction of courts of equity "to all cases

[Kuhl v. M. Gally Universal Press Co.]

founded on a gambling contract so far as to sustain a bill of discovery and grant relief," (Code, § 638), where a bill is filed to foreclose a mortgage given to secure notes founded upon a gambling consideration, a cross bill can be maintained by the mortgagor and relief granted thereon declaring the notes and mortgage securing the same void and not enforceable.

APPEAL from the Chancery Court of Mobile.

Heard before the HON. WILLIAM H. TAYLOE.

The bill in this case was filed by the M. Gally Universal Press Company against the appellant, Maria M. Kuhl, to foreclose a mortgage which was executed by the defendant Kuhl to the Clawson Slot Machine Company, to secure the payment of her 16 promissory notes of $250 each, which said notes were payable to Charles Schimpf, and were by said Schimpf indorsed in blank to the Clawson Slot Machine Company. Prior to the maturity of said notes, the Clawson Slot Machine Company transferred and assigned said notes and the mortgage securing the same to the complainant. Three of the sixteen notes were paid before the bringing of the suit, or the filing of the present bill.

Maria Kuhl in her answer, set up that the notes and mortgage had been given in payment of certain "dice fortune telling machines," which she alleged were gambling devices, purchased by one Charles Schimpf from the Clawson Slot Machine Company; and she prayed that her answer might be taken as a cross bill, and that the mortgage attached to the bill of complaint be cancelled and set aside upon the ground that it was founded upon an illegal consideration. The facts of the case are sufficiently stated in the opinion.

On the final submission of the cause, on the pleadings and proof, the chancellor dismissed the cross bill, and granted the relief prayed for by the complainant in the original bill. From this decree the defendant appeals, and assigns the rendition thereof as error.

LESLIE B. SHELDON and GREGORY L. & H. T. SMITH, for appellant.—The principal question in the case is whether the mortgage sought to be foreclosed, was a contract founded, in whole or in part, upon a gambling consideration under section 2163 of the Code. Every con-

tract that at common law is *contra bonos mores* because a gaming contract, is directly within the influence of section 2163. Therefore every contract that is *contra bonos mores* and voidable at common law between the original parties, because partaking of the characteristics of a gaming contract, is absolutely void under section 2163 of the Code of Alabama. If then, the contract is, by reason of its gambling characteristics, *contra bonos mores* and void as between the original parties at common law, then it is necessarily "founded in whole or in part upon a gambling consideration" within the meaning of section 2163 of the Code of Alabama, and if void within the meaning of the Code, it is void even in the hands of *bona fide* purchasers.—*Manning v. Manning,* 8 Ala. 138; *Flinn v. Barclay,* 15 Ala. 629; *Hawley v. Bibb,* 69 Ala. 52; *Trades Bank v. Alsop,* 19 N. W. Rep. 683. ·

The mere knowledge that the borrower intended to gamble with the money, might not be sufficient to defeat a recovery, but if knowing that the borrower intended to use the money to gamble with, the lender loaned him the money to enable him to gamble, no recovery could be had.—Clark on Contracts, p. 483; *Waugh v. Beck,* 60 Amer. Rep. 354 (114 Pa. St. 105); *Rose v. Mitchell,* 45 Amer. Rep. 520, (6 Col. 102); *Wallace v. Lark,* 32 Amer. R. 516 (12 S. C. 576). The same rule is applicable to the sale of property. The mere knowledge that the purchaser proposes to use the property to gamble with, may not be sufficient to defeat a recovery of the purchase money, but if he sells it to enable the purchaser to use it for gambling purposes, or if he does any act in furtherance of the purpose of the buyer, he cannot recover the purchase money. As to intent.—Clark on Contracts, p. 481; *Kohn v. Melcher,* 43 Fed. Rep. 641; *Hunstock v. Palmer,* 23 S. W. 294; *Sherman v. Wilder,* 106 Mass. 537; *Riley v. Jordan,* 122 Mass. 132; *Ernst v. Crossby,* 35 N. E. 603; *Dougherty v. Seymour,* 26 Pac. R. 823. As to aiding the carrying out of the purpose.—*Aiken v. Blaisdell,* 41 Vt. 655; *Foster v. Thurston,* 11 Cush. 322; *Webster v. Munger,* 8 Gray 584; *Tracey v. Talmage,* 14 N. Y. 166; *Arnot v. Pittston & Elmira Coal Co.,* 68 N. Y. 566; *Gaylord v. Soragen,* 32 Vt. 110.

[Kuhl v. M. Gally Universal Press Co.]

That the machines sold were automatic gaming tables, there can be no doubt. They were so fitted out that when a nickle was dropped in the slot, the machine would throw six dice, and that a card on the machine, with numbers corresponding with every possible throw of the dice would indicate how many, if any, cigars the player had won.—*Miller v. State*, 48 Ala. 128; *Buckalew r. State*, 62 Ala. 334. The notes given in renewal of those first given for the purchase price of the machines were tainted with the same illegality and subject to the same defenses.—8 Amer. & Eng. Encyc. of Law, 1019; *Brewer r. Morgan*, 13 Ala. 551; *Stone v. Mitchell*, 7 Ark. 21; *Warder v. Palmer*, 4 James (N. C.) 524; *Cutter v. Welsh*, 43 N. H. 497; *Brown v. Watson*, 6 B. Mon. (Ky.) 588.

CLARKES & WEBB and BESTOR & GRAY, *contra*.—The notes which were executed by the defendant for the purchase price of the slot machines is not founded in whole or in part upon a gambling consideration, even though the machines which were sold and for the purchase price of which the notes were given were gambling devices; yet this fact would not infect the notes with illegality as being founded upon a gambling consideration.—*Rose v. Mitchell*, 45 Amer. Rep. 520; *Lea v. Cassen*, 61 Ala. 312. Therefore the complainants in the present bill were entitled to have the mortgage foreclosed. The complainant in this suit was a *bona fide* holder of the note and mortgage for value and without notice. Therefore the present suit is not subject to the defense interposed by the defendant.—*Hawley v. Bibb*, 69 Ala. 52, 57.

SHARPE, J.—The original bill seeks the foreclosure of a mortgage on real estate given to secure certain promissory notes made by defendant to one Charles Schimpf and by him endorsed to the Clawson Slot Machine Company, and by that company transferred together with the mortgage to the complainant. The debt originated in the purchase by Schimpf of 300 dice throwing slot machines at thirty-five dollars each from complainant's transferor, together with the exclusive right with certain exceptions to use and dispose of the ma-

chines in certain designated States. In the first contract in which the machine company was represented by one Blanckensee, the machines were to be shipped to such points as Schimpf might designate with a sight draft attached to the bill of lading to be paid on delivery. After a few weeks, a number having been shipped and only a part of them having been paid for and delivered, another agreement was made—the Machine Company then acting through its secretary, one Cross—whereby the remainder of the machines were to be delivered upon the orders of Schimpf, who then made a partial payment of three thousand dollars and gave for the balance his several notes endorsed by the defendant Mrs. Kuhl who also, to further secure the notes, gave a mortgage upon her property described in the bill.

Subsequently the machines having been delivered and three of those notes having been paid, others were past due and unpaid, and a new agreement was made according to which the unpaid notes and the mortgage were surrendered, and in their place were substituted notes made by the defendant to Schimpf and endorsed by him to the Machine Company, that company taking a new mortgage executed to it by the defendant upon the same property embraced in the old mortgage, and Schimpf then transferred the machines to the defendant: Of the last mentioned notes three were paid and the remainder are the same here involved.

Defense is made under the statute which declares that "all contracts founded in whole or in part upon a gambling consideration are void," (Code, § 2163) ; and the cross-bill seeks relief against the enforcement of the notes and mortgage.

The dice throwing machines were plainly gambling devices. Their use and adaptation, as disclosed by the proof, was to determine by a chance throw of dice, whether the person depositing his money in the slot should lose the money or win cigars. In *Loiseau v. State,* 114 Ala. 34, the operation of a similar machine was described, and it was said that those playing against them were guilty of gambling.

The sale of an article adapted to such use is not in itself illegal, and under the weight of authority it may

be assumed that the mere knowledge on the part of the vendor that the article will probably be used for gambling will not render the contract of sale invalid. If, however, the vendor goes beyond the act and purpose of making a sale, and by making it actively and purposely participates in the promotion of the illegal use, he becomes *particeps criminis* and cannot recover upon the contract of sale.—*Bickel v. Sheets,* 24 Ind. 1; *Rose v. Mitchell,* 6 Col. 102, 45 Am. Rep. 520; *Hill v. Spear,* 50 N. H. 253, 9 Am. Rep. 205; *Skiff v. Johnson,* 57 N. H. 475.

The generally established rule independent of statute 'is that contracts made in furtherance of gambling transactions, though not immediately involving a wager, are void as against public policy.—*Authorities, supra; Embery v.Jemison,* 131 U. S. 336; *Irwin v. Williar,* 110 U. S. 499; *Helber v. Schantz,* 109 Mich. 669; *Johnson v. Clark,* 51 N. Y. Supp. 238; *Spurgeon v. McElwaine,* 27 Am. Dec. (Ohio) 266; *Graves v. Johnson,* 15 L. R. A. 834.

That such is the nature of the contract involving the original sale of the slot machines, the evidence is convincing. It appears that shortly before the trade in question Blanckensee had placed a machine in Schimpf's saloon in Mobile, had explained to him its use and contracted to pay him for cigars which Schimpf was to supply to settle the machine's losses and also to pay Schimpf ten per cent of the profits which he represented to be about sixty per cent, sometimes amounting to forty dollars per day for a single machine. Several other machines had then been placed in operation in Mobile under similar contracts with others. Having thus interested Schimpf, Blanckensee sold him for cash eighteen machines including the going machines in Mobile and the contracts he had for their use. He then sold Schimpf the 300 machines and the territorial right, agreeing at the same time to assist Schimpf in placing a supply in Birmingham, which agreement he carried out by visiting Birmingham with Schimpf, and placing for him about thirty machines under contracts similar to those made in Mobile. Having thus inaugurated the game, the Machine Company guarded it from interference by posting a standing offer of reward for the apprehension of per-

sons tampering with or robbing a machine which offer was maintained after Schimpf's purchase. On one occasion thereafter the company actually paid such a reward of twenty-five dollars and explained its motives to Schimpf, saying: "Our object was to benefit you, thinking that in that way the police force would understand that we mean to be honorable in our transactions and they would not be prejudiced against us. We thought it would be a great help to you in placing machines in Mobile. Kindly inform us what effect it has, had, if any."

Schimpf was inexperienced in the business and the service of Blanckensee in starting the business doubtless formed a material inducement to the purchase. It was as much a part of the consideration as was the value of the machines. The Machine Company was bound by the contract of its agent, and its attitude as a promoter of the gambling business is reasonably established.

The first notes and mortgage given represented the balance due upon the same contract, so that the illegality of consideration was carried into them. When she gave the notes and mortgage here involved, the defendant's liability was only as endorser on the first notes and as the maker of the first mortgage. The surrender of those first papers and an extension of time of payment formed the only consideration moving from the Machine Company to her for the second papers. Long prior to their execution the company had parted with all its interest in the machines, and their transfer to defendant was a consideration moving to her only from Schimpf. Whatever taint of illegality existed in the first notes and mortgage infected the last notes and mortgage, and the same defense can be made to the last as to the first. *Embry v. Jemison, supra; Hynds v. Hays,* 25 Ind. 31.

Illegality of consideration for negotiable paper arising merely from its being offensive to public policy does not affect the rights of an innocent holder for value; but the rule is otherwise when the instrument is made absolutely void by statute as in contracts founded in whole or in part on a gambling consideration.—*Manning v. Manning,* 8 Ala. 138; *Saltmarsh v. Tuthill,* 13 Ala. 390; *Finn v. Barclay,* 15 Ala. 626; *Hawley v. Bibb,* 69 Ala. 52.

But it is contended for the complainant that though the contract be *contra bonos mores* as in furtherance of gambling, it is not a gambling contract within the meaning of the annulling statute; and that, therefore, complainant should be protected as an innocent holder of the notes. The moral principle which the contract offends is precisely that which the statute is designed to protect. The terms of the statute do not require its restriction to actual wagers or to contracts made in settlement of betting losses. Such has not been its interpretation in this court.

The case of *Hawley v. Bibb, supra*, involved a bill filed by a transferee of a bill of exchange to foreclose a mortgage given to secure the bill, the consideration of which was a loan of money furnished the borrower as a stake with which to engage in the buying and selling of cotton futures. Upon the ground that the contract was governed by the laws of New York it was held enforceable here; but it was said that "if the contract had contemplated that the money should have been advanced and loaned in this State upon transactions made here, the bill of exchange would fall within the interdiction of the statute and would be void even in the hands of an innocent holder for value."

In *Peet & Co. v. Hatcher*, 112 Ala. 514, a similar transaction was under consideration by this court, and the case of *Hawley v. Bibb* was referred to approvingly as showing that the statute was applicable to such a case.

The principle so declared in those cases is applicable to the transaction here involved, and the conclusion follows that the notes and mortgage in suit must be held void under the statute referred to.

Ordinarily courts of equity will refuse assistance to all the parties to an illegal transaction. But section 638 of the Code extends the jurisdiction of courts of equity "to all cases founded on a gambling consideration so far as to sustain a bill of discovery and grant relief." The policy of this statute is not to aid a loser but to discourage gambling; and accordingly the courts are bound to exercise the jurisdiction and to relieve in proper cases without imposing upon the party seeking it the usual condition of doing equity.—*Finn v. Barclay, supra;*

[Harwell, Admr. v. Phillips & Buttorff Manfg. Co.] •

*Cheatham v. Young,* 5 Ala. 353. Therefore, under the cross-bill the notes and mortgage must be declared void unconditionally; but the decree will also direct the delivery up of 125 machines to the complainant according to the defendant's offer made in her cross-bill.

The decree appealed from will be reversed and a decree here dismissing the original bill, and granting relief under the cross-bill as has been indicated. The appellee will pay the costs in this court and in the chancery court.

Reversed and rendered.