# CHARLESTON.

### HURLBURT & SONS *v.* STRAUB.

Submitted September 10, 1903—Decided December 5, 1903.

1. OFFICE JUDGMENT—*Power to Set Aside.*
    Where the plaintiff has filed with his declaration at rules the affidavit required by section 46, ch. 125, Code, the circuit court has no authority to set aside the office judgment regularly entered, until the defendant has pleaded to issue and filed his counter affidavit with his plea, but it is the duty of such court in the absence of such affidavit to enter up judgment on the plaintiff's affidavit. (p. 306).

2. OFFICE JUDGEMENT—*Affidavit too Late.*
    When the defendant fails to file such affidavit at the first term of court at which such office judgment becomes final he cannot file it at any succeeding term of court. (p. 306).

3.  GAMING—*Check in Payment of Debt Incurred.*

The alleged loser in a game of poker gave the winner a check for $500.00 payable to an innocent merchant firm. The firm refused to accept it, until the loser promised payment thereof on maturity; such check is not void under section 1, chapter 97, Code, as it represents a debt between the firm and loser with which the winner has nothing to do. (p. 307).

4.  GAMING—*Money Loaned to Pay Debt.*

The loaning of money to pay a gaming debt not at the time thereof but after such debt has been incurred, is not forbidden by the statute against gaming, chapter 97 Code, even though the lender has knowledge for what purpose the money is going to be used. (p. 308).

5.  GAMING—*Note or Check.*

A note or check payable to the winner in a gaming transaction is void and no suit can be maintained thereon even by an innocent holder for value unless the maker has induced the purchase thereof by promising payment. In such case the maker is estopped as against such innocent holder from setting up the gaming consideration for such note or check. (pp. 308, 309).

6.  NEGOTIABLE INSTRUMENT—*Holder's Rights.*

A *bona fide* holder for value of a negotiable instrument not void, taken in due course of business, takes the same free from all equities existing between the maker and payee of which he has no notice. (p. 309).

7.  REVERSAL—*Judgment Given.*

On a reversal of a judgment if the defendant's pleas show no defense to the action this Court will render judgment for the plaintiff. (p. 309).

Error to Circuit Court, Taylor County.

Action by H. O. Hulburt & Sons against Charles R. Straub. Judgment for defendant, and plaintiffs bring error.

*Reversed.*

W. B. MAXWELL, for appellants.

HARDING & HARDING, for appellee.

DENT, JUDGE:

H. O. Hurlburt & Sons complain of a judgment of the circuit court of Taylor County, in a certain action at law wherein they are plaintiffs and Charles H. Straub is defendant.

The facts are as follows:  Sometime in the month of July 1902, Chas. H. Straub, gave the following check to one P. L. Bartlett:  "Grafton W. Va. Oct. 15. 1902.  The Grafton Bank, Pay to the order of Loar Bros. ($500.00) Five Hundred 00-100 Dollars, for cash.  Chas H. Straub."  Mr. Bartlett took the check to Loar Bros. store, where they were carrying on the jewelry business, and asked that he be given the money on it.  The members of the firm were absent and the Clerk in charge knowing that the firm had before cashed checks for the maker advanced $100.00 on the check and held the residue until the firm should see it.  When it was shown to Mr. George Loar, a member of the firm, he declined to accept it until he should see Mr. Straub.  He immediately called Mr. Straub's attention to it and Mr. Straub told him the check was all right, that he had no money in the bank, but he would pay it on its maturity.  Mr. Loar being doubtful of Mr. Straub's financial ability asked him if he would secure the check and he assured him he would in any manner except by deed of trust on his real estate as he did not want his wife to have anything to do with it.  Mr. Loar upon these assurances accepted the check and paid the money to Bartlett less the discount thereof.  Mr. Loar was informed by Mr. Bartlett that the check was given in a coal deal.  The next morning Mr. Loar again saw Mr. Straub and asked him about giving security for the payment of the check.  Mr. Straub informed him that he had changed his mind and would not pay the check. Loar Bros. assigned the check to the plaintiffs, who gave them credit for the amount on a wholesale merchandise bill.  Neither Loar Bros. before acceptance nor the plaintiffs had any notice of the transaction between Bartlett and Straub, which it appears was a game of poker and the indebtedness existing between Mr. Straub and Mr. Bartlett was for money lost or money loaned to be lost in such game.  The check being presented to the bank in due course of business was protested for non-payment.  The plaintiffs then brought suit against Straub to enforce payment thereof.

With their declaration they filed an affidavit under section 46, chapter 125, Code, of the amount they were entitled to recover.  At December rules Straub failing to put in an appearance the office judgment was confirmed.  At the January term the case was placed on the office judgment docket,

Straub then appeared and moved to set aside the office judgment and tendered his two several pleas in writing. The plaintiffs resisted the motion because he failed to file the affidavit required by the section aforesaid. The court however set aside the office judgment and took time to consider of the pleas, to which action of the court the plaintiffs objected and excepted. The case so stood until the April term when the court overruled the motion to reject the pleas, allowed them to be filed, and also allowed the defendant to file the affidavit required by section 46, chapter 125, Code, to which the plaintiffs objected and excepted because it come too late. The plaintiffs then filed a special replication to the pleas in which defendant joined.

The jury found a verdict in favor of the defendant upon his pleas, which the court on motion refused to set aside but gave judgment accordingly, to which the plaintiffs excepted.

The first question is did the court err in setting aside the office judgment. This depends on the language of section 46, chapter 125, Code, after reciting the affidavit filed by plaintiff this section in relation to the defendant says: "No plea shall be filed in the case either at rules or in court, unless the defendant shall file with the plea, his affidavit that there is not as he verily believes any sum due from him to the plaintiff upon the demand or demands stated in the plaintiff's declaration * * *." "If such plea and affidavit be not filed judgment shall be entered for the plaintiff by the court for the sum stated in his affidavit, with interest thereon from the date of the affidavit till paid." This language is imperative and gives the court no discretionary power in relation thereto. If the affidavit is not filed the court must enter up judgment in favor of the plaintiff and if he refuses to do so and arbitrarily sets aside the office judgment, his action is *coram non judice* and he may be compelled to enter up judgment thereon by *mandamus. Marstiller* v. *Ward,* 52 W. Va. 74, (43 S. E. R. 178) ; *Quesenbury* v. *Peoples Building and Loan Association,* 44 W. Va. 512.

Having no authority to set aside the office judgment he could neither allow the pleas nor affidavit to be filed at the next term but judgment should have been entered for the plaintiffs. And it is the duty of the court to reverse the judgment and enter up the judgment the circuit court should have entered for want of the defendants affidavit presented at the proper time.

As this case presents some interesting questions that should be settled for the public good we proceed to consider it on its merits. The main question is as to whether a recovery on a check of this character is forbidden by section 1, chapter 97, Code, which is in these words: "Every contract, conveyance or assurance, of which the consideration or any part thereof, is money, property or other thing, won or bet at any game, sport, pastime or wager or money lent or advanced at the time of any gaming, betting, or wagering, to be used in being so bet or wagered (when the person lending or advancing it knows that it is to be so used) shall be void."

Under a similar but more explicit section the court of appeals of Virginia when this state was a part thereof, held: "That the assignee of a bond for money won at gaming cannot recover, though the assignment was for a valuable consideration and though he had no notice of the origin of the bond, unless the obligor before the assignment induce him to take the bond by promising to pay him the money." *Woodson* v. *Barrett,* 2 H. & M. 80; 3 Am. Dec. 612.

And in *Rucker* v. *Smith,* 1 Wash. 299, and *Hoomer* v. *Stack, Id.,* 389, the doctrine was established that if an assignee is induced by assurance of payment from the obligor to become the purchaser of the note, he can enforce payment thereof.

These cases are on the theory that the contract is void and non-negotiable in whatever hands found, innocent or guilty, unless the obligor has given new vitality thereto by inducing the purchaser to take it on promise of payment. Then it becomes a new promise between the obligor and purchaser and is relieved from the inhibition of the statute.

The statute forbids the loaning of money at the time of any gaming to be used for the purposes thereof when the lender knows it to be so used but it does not forbid the loaning of money after such gaming and not at the time and place thereof to be used in the payment of debts thus contracted. In 14 Am. & En. En. Law 642, the law is stated to be: "Where the loss is already incurred, any person other than the winner who advances money or other property to the loser to enable him to pay the loss may recover such advance in the absence of a special statute." In the case of *Armstrong* v. *The National Exchange Bank,* 133 U. S. 434, it is held that, "Where losses have been made in an illegal

transaction, a person who lends money to the loser, with which to pay the debt, can recover the loan notwithstanding his knowledge of the fact that the money was to be so used." Both under the statute and decisions the lender who has no knowledge that his money is going to be used for gaming purposes or to pay a gaming debt has the undisputed right to recover the same, nor is the note given for such loan either void or voidable.

On this case Loar Bros. at the instance of Straub on promise of repayment and security furnished the money to pay a debt which they did not know was a poker debt on a check drawn in their favor by Straub. The check never became an evidence of debt until it was accepted and paid by Loar Bros. It is therefore an evidence of debt alone between Loar Bros. who had no part in or knowledge of the gaming and Straub the loser. The winner was not a party to it in any way, hence it is in no sense rendered void by the statute. It was accepted by Loar Bros. on the credit and promises of Straub alone. They would not have taken or accepted it from the winner, although they might have legally done so as representatives of a loan to Straub, if the latter had not agreed with them to pay it when it should fall due. If Straub had refused to promise payment of the check and repudiated it they could have immediately recovered back from Bartlett the $100.00 advanced by the clerk, but by his promises and assurance he induced them to pay the balance and hence he ratified the unauthorized payment already made by their clerk.

In the case of *Armstrong* v. *American Exchange Bank,* cited, the court lays it down as an established rule that "An obligation will be enforced, though indirectly connected with an illegal transaction if it is supported by an independent consideration, so that the plaintiff does not require the aid of the illegal transaction to make out his case."

This rule applies to this case. Here the plaintiffs could make out their case without reference to the gaming contract. The check was nothing more than an invitation from Straub to Loar Bros. to pay for him the sum of $500.00 without any specification of the reason therefor. If they had accepted the check without consulting him it would have been binding on him, 2 Mod. 279, and cases before *cited,* for the consideration as between him and Loar Bros. was the cash payment specified on the

check and not a gaming consideration. Loar Bros. were not satisfied to accept it without consulting Mr. Straub. He assured them it was alright, would be paid and he would do anything he could to secure it.

The next day after they had accepted it they again sought him about securing it. He then told them he had changed his mind and would not pay it. Mr. Straub did not seek them either time to notify them not to accept the check or that it was for a gambling debt. They were compelled to seek him and he at first assures them that it is alright and will be paid at maturity, and after they had accepted and seek him to make it secure he repudiates it. The check not being void under the statute the consideration therefor being cash, the Hulbert Brothers being innocent holders thereof, for value without notice, are entitled to reover thereon.

An examination of defendants pleas shows that neither of them allege that plaintiffs had any notice of anything that would vitiate it in their hands as the innocent holders thereof for value. The second plea does not pretend to make any such allegation. The first plea avers that the check was given to one Bartlett in payment of a gambling debt that Loar Bros. before acceptance had notice that it would not be honored. And it further alleges, "That said defendant is not the holder of said writing obligatory for a valuable consideration and without notice of the character of said instrument, but had full and complete information of its being issued at the gaming table and in payment of a debt contracted at the gaming table." The plaintiffs are no where mentioned in the plea. Assuming that the plaintiffs are meant by the word "defendant" in the clause last quoted, the allegation is that they had notice "of its being issued at the gaming table and in payment of a debt contracted at the gaming table." It does not allege that they had notice that Loar Bros. had notice before acceptance that it would not be honored.

Although plaintiffs had knowledge that the check was issued in payment of a debt contracted at the gaming table it would be valid in their hands unless they had notice that the acceptors were notified that it would not be honored before they accepted and paid it. Both pleas are based on the theory that the check is

void under the statute which as heretofore shown is not true—not being a contract between the winner and loser but between the loser and Loar Bros. not parties to the gaming within the purview of the statute. The note not being void the plaintiffs took it free from all equities existing between the maker and acceptor of which they had no notice. The only equity claimed to exist between the maker and acceptor is that the acceptor had notice not to accept prior to acceptance. The plea fails to allege notice of any such equity in the plaintiffs, hence as to them it was bad. Neither plea presenting any defense as against the plaintiffs they should have both been rejected and judgment entered for the plaintiffs. All other questions being legal, the only question of fact which could have been submitted to the jury was as to whether Loar Bros. had notice not to accept the check, before they did so. On this even the defendants evidence is in favor of the plaintiffs. This however is an issue in which the plaintiffs are not interested for there is no allegation in the pleas that they had notice of such defence.

The gaming statute was enacted to prevent all kinds of gambling and not for the purpose of allowing those who engage in such pastime unlawfully, to foist on innocent parties by any trick or device their gambling debts or expenses.

If the law permitted, how easy it would be for two gamblers with hardened consciences to fix up a check of this kind upon innocent parties, induce them to accept it on false representations and after they had mutually received end enjoyed the proceeds in common, avoid the check as being a gaming contract. Gaming of this kind would become very popular among gamesters, for they could continue to enjoy their beloved game of poker and make wholly innocent parties become their bankers and bear their losses. Such a law would be a law of promotion instead of prevention. If the defendant was really cheated as he says, he may deserve some sympathy, yet he should not be permitted to make innocent parties pay his gaming debts. The law breaker must bear the penalties thereof. If a lamb does not want to be shorn he must avoid the shears. The law will not permit him to drag the innocent beneath them.

The judgment is reversed, the verdict of the jury set aside and a judgment entered for the plaintiffs for the sum of

$501.60 with interest thereon from October 16, 1902, until the 5th day of December, 1903, amounting in the aggregate to the sum of $535.85, with interest thereon until paid.

*Reversed.*