## Holzbog, et al. v. Bakrow.

(Decided November 28, 1913).

Appeal from Jefferson Circuit Court
(Chancery Branch, First Division).

1. Bills and Notes—Assignment—Consideration.—The maker of a note who induces another to purchase it from the payee, assuring him that it is valid and will be paid, cannot set up the illegality of the consideration against the assignee, who had no notice thereof.

2. Bills and Notes—Assignment—Estoppel.—But no estoppel arises from the payment by the assignee of a debt of the assignor for which he was already bound, although made upon the assurances of the maker of the note, that the note was valid and would be paid.

3. Bills and Notes—Infirmity of Note—Pleading.—A pleading which avers that the defendant did not have notice of the infirmity of the note until the————day of December, 1911, and that he ac-

quired it on the———day of———, 1911, does not show that he acquired it before he had notice of the illegality of the consideration, as the pleading must be taken most strongly against the pleader.

SHIELD & CAMPBELL for appellants.

BENJAMIN F. WASHER, HELM BRUCE for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON—Reversing.

Richard D. Bakrow brought this suit to recover on a note for $14,412.64, dated January 8, 1909, due one year after date, executed by George H. Holzbog and H. M. Flexner to John M. Sharp, and assigned by Sharp to Bakrow. The defendants in their answer set up in substance that the note was executed in settlement of certain bets and wagers which were lost by George Holzbog to John M. Sharp in bucketshop transactions had in the city of Louisville, Kentucky, in the years 1906, 1907 and 1908, upon the rise and fall of the market in stocks and bonds, and that the whole consideration of the note was the money then lost to Sharp in these gaming transactions; they relied on the statutes against gaming as a bar to the right of the plaintiff to recover. They also alleged that they had paid Bakrow on the note $7,500 on January 8, 1910, and they prayed judgment against him for the amount so paid, with interest. Bakrow in his reply pleaded these facts: Holzbog and Flexner executed their note to John M. Sharp for $14,412.64 on January 8, 1908, due in one year; on December 6, 1908, Sharp assigned this note to Bakrow, as collateral security for certain obligations then assumed or to be assumed by him; due notice of the assignment was given to Holzbog and Flexner, and the notice was accepted by them; thereafter on January 8, 1909, this note having matured, Holzbog and Flexner executed to Sharp the note sued on in renewal of it. On February 16, 1909, Sharp borrowed of J. J. Douglass $10,000, Bakrow signing the note as his surety. Sharp died on August 9, 1909, and Douglass demanded of Bakrow the payment of his note. Bakrow then held the note of Holzbog and Flexner to secure him, and he proposed to Douglass that he would turn over this note to Douglass as security on the Douglass note. Thereupon Douglass, Flexner, Holzbog and Bakrow had a meeting, and in that meeting Holzbog and Flexner were asked by Douglass concerning their note and they

each acknowledged the execution and delivery of the note, affirmed its validity and promised to pay it. Acting upon this representation, Bakrow executed his note to Douglass for $10,000, and attached the Holzbog and Flexner note to it as collateral security, Bakrow thus making himself alone liable for the debt. On January 6, 1910, they paid $7,500 on the note and Bakrow paid the balance of the Douglass debt, the collateral being then returned to him. After this the administrator of John M. Sharp's estate set up claim to this note in the hands of Bakrow, and also a claim to other collaterals that Bakrow held. In settlement of this claim Bakrow on the ————— day of —————————, 1911, paid Sharp's administrator $20,000, and kept the note of Holzbog and Flexner as his personal property, being induced to do this by the promises of Holzbog and Flexner to pay the note and their repeated statements that the note was valid and would be paid. Bakrow until December, 1911, had no notice, knowledge or information that there was any invalidity, infirmity or defense or claim of such existing as against the note; on the contrary until that time the makers had assured him that the note was valid and had repeatedly promised to pay it. He pleaded that the defendants are now estopped to set up the invalidity of the note against him after he had taken it under the circumstances above indicated. The defendants, Holzbog and Flexner, demurred to the reply and their demurrer being overruled, they declined to plead further. The court entered judgment against them on the note, dismissing their counterclaim. From this judgment they appeal.

It is insisted for the appellants that though they induced Bakrow to become the holder of the note by their representations that the note was valid and would be paid, still they are not liable upon it for the reason that an estoppel cannot be applied to make good an act forbidden by law. (16 Cyc., 783.) The rule that an estoppel cannot exist whereby a party to a gambling contract is prevented from setting up its illegality as a defense, is applied in all cases as between the original parties or as against assignees who simply stand in the shoes of the original party. But when the estoppel is invoked by an innocent purchaser who has been induced to purchase the paper by the representations of the maker, a different rule should be applied. In the case styled Anonymous, 2 Mod., 279, decided in 1677, the loser in a

game acknowledged the debt to the purchaser of the bond, and thus induced him to buy it. The court were all of opinion that the case was not within the statute and judgment was given for the plaintiff. In Davidson v. Franklin, 20 Eng. Com. Law, 363, a similar case Lord Tenterden, said:

"This is an application to the discretion of the court, which ought to be exercised so as best to advance the ends of justice; and I think that, according to the maxim that no man ought to be permitted to allege his own misconduct, we ought not to make this rule absolute. Here the defendant stated to the agent of the party who purchased the debt, that it would be paid. If we made this rule absolute, we should enable the defendant to defeat the judgment by his own fraud and misconduct, and to injure a person who advanced money upon the faith that his representation was true."

In Wooldridge v. Cates, 2 J. J. M., 222, this court followed the same rule in a gaming transaction. It said:

"If the principal obligor in a note, induces an assignee to purchase it, he waives any equity which he may have against the obligee. This doctrine has been so repeatedly settled, that it was said to be unnecessary to cite authorities to prove it, in the case of Morrison's Admr. v. Beckwith, 4 Monroe, 73; and certainly, no doctrine of the law is better established. If Cates had induced Major to purchase the note from Brenham, and had told Major he would pay it, although it was executed upon a gaming consideration Cates by so doing, would have precluded himself from all equitable defense against Major. The taking in the old note, and executing a new one to Major's agent, constitutes a case equally strong against Cates."

It is insisted for appellants that the statute under which that case was decided differs from our present statute. We have examined the statute with some care but we do not find that it was substantially different from the present statute. It provided that all promises, agreements, notes, bills, bonds, judgments, mortgages or other securities made in consideration of losses in games, plays or wagers, should be utterly void, and of none effect to all intents and purposes whatever. It also provided that the loser might recover what he had paid. (See Morehead and Brown Statutes, Vol. 1, 751-755.) The provisions of the statutes now in force so far as material are as follows:

"Every contract, conveyance, transfer, or assurance, for the consideration, in whole or in part, of money, property, or other thing won, lost or bet in any game, sport, pastime, wager, or for the consideration of money, property, or other thing lent or advanced for the purpose of gaming, or lent or advanced at the time of any betting, gaming or wagering to a person then actually engaged in betting, gaming, or wagering, shall be void." (Ky. Stats., Section 1955.)

"If any person shall lose to another at one time, or within twenty-four hours, five dollars or more, or property or other thing of that value, and shall pay, transfer or deliver the same, such loser, or any creditor of his, may recover the same, or the value thereof, from the winner, or any transferee, of the winner, having notice of the consideration, by suit brought within five years after the payment, transfer or delivery. Recovery may be had against the winner, although the payment, transfer or delivery was made to his indorsee, assignee or transferee; and if the conveyance or transfer were of real estate, or the right thereto, in violation of the first section of this chapter, the heirs of the loser may recover it back by suit brought within two years after his death, unless it shall have been passed to a purchaser in good faith for valuable consideration without notice." (Ky. Stats., Section 1956.)

"If any person or persons shall engage in any hazard or game on which money or property is bet, won or lost, such person or persons shall be subject to a fine of not less than twenty dollars nor more than one hundred dollars." (Ky. Stats., Section 1977.)

It will be observed that our present statute omits the word "judgment," and that a recovery is only allowed from any transferee of the winner having notice of the consideration; that as to the land the loser may recover it back by suit unless it shall have passed to a purchaser in good faith for valuable consideration without notice. Under this statute it has been held that a judgment for a gambling debt is not void, and that an appeal bond given to supersede such a judgment, may be enforced. (Jacob v. Hill, 111 Ky., 926.) There are a number of cases in this country in which under similar statutes, the estoppel has been applied. In Buckner v. Smith, 1 Am. Dec., 463, the court disposing of the objection, said:

"The principal objection is that this was a gaming debt, contracted by an infant, which no subsequent act

of his nor any transfer could make valid. It is in general true, that an assignee of a bond of this sort, can be in no better situation than the obligee, and the cases cited at the bar sufficiently establish the point. But the present case is very different upon principle from those cases, and that difference is produced by the conduct of Beverly, who by his assurances of payment, induced Mr. Dixon to receive an assignment of it. He not only concealed from him the legal objections to the bond but afterwards assumed to pay it, and when sued voluntarily confessed judgment.''

(To same effect see Hoomes v. Smock, 1 Wash., 389; Woodson v. Barrett, 2 Hen. & Mun., 80, Mayp v. Giles, 1 Mun., 533; Finn v. Barclay, 15 Ala., 626; Blades v. Newman, 19 R., 1062; Manning v. Manning, 8 Ala., 144; Dow v. Higgins, 72 Ill. Appeals, 305; Hurlburt v. Smith, 46 S. E., 163, 54 W. Va., 303.)

Where a note is given for a gambling consideration, the infirmity of the note may be shown against a bona fide holder. (Bohn v. Brown, 101 Ky., 360; Alexander v. Hazelrigg, 29 R., 1212.) But in those cases there was no conduct of the maker inducing the holder to part with his money. The cases turned simply on the construction of the statutes. There are a number of cases relied on for appellants where the court refused to apply the estoppel, but they were cases where the estoppel was invoked either in favor of the original payee or some one who stood in his shoes, or had notice of the infirmity of the paper when he took it. (Calby v. Title Insurance Co., 35 L. R. A. (N. S.), 813; Embry v. Johnson, 131 U. S.; 336; Cochran v. German Ins. Bank, 9 R., 196.)

In Ragan v. Chenault, 78 Ky., 546, the statute required the contract to be in writing, and it was simply held that unless the statute was followed the contract was invalid. While gaming is unlawful and gaming contracts void, the sale of promissory notes is lawful. There was no unlawfulness in the assignment of the note to Bakrow. As between the original parties there can be no estoppel of the defendants from showing the illegality of the transaction, but when they induce an innocent third person to buy the note by representing the note to be valid, and assuring him it will be paid, he is not affected by the illegality of the original transaction of which he had no notice. His rights arise out of a transaction which is entirely lawful.

Appellants insist that the reply shows that Bakrow had so much dealings with Sharp that he must have known this note was given in a bucketshop transaction and that they gave him no assurance which could reasonably mislead him or influence him in the settlement with Sharp's estate of which they had no notice. But this cannot be so determined on the face of the reply.

Lastly it is insisted for appellants that the facts stated in the reply do not show that they induced Bakrow to alter his position for the worse by any representations they made, and that the facts stated in the reply show that Bakrow knew of the infirmity of the note. By their representations they not only induced Bakrow to take up the $10,000 note on which he was only surety, and to execute his personal note therefor, but they also induced him to keep this note in the settlement he made with Sharp's administrator, in which he paid Sharp's administrator $20,000. This payment of $20,000 was induced as the reply avers by the belief on Bakrow's part that the defendant's note would be paid, and the representations which they had made to him about the note, warranted him in so believing. Bakrow parted with nothing of value on the faith of the representations of the defendants in the transaction with Douglass or with the bank at Cincinnati referred to in the reply. Bakrow was personally bound for these debts, and when he paid them he simply paid what he owed. He was in no worse position after he renewed the notes to the bank or to Douglass than he was before he renewed them. In the transaction with the administrator, however, he paid out $20,000, and retained the defendants' note. It is admitted in the reply that he had notice of the infirmity of the note in December, 1911. It is alleged in the reply that the transaction with the administrator occurred on the ———— day of ————, 1911. The reply does not show that this transaction occurred before he had notice of the infirmity of the note; the pleading must be taken against the pleader. If he had notice of the infirmity of the note when he had the transaction with the administrator, he cannot recover; for the rule is that the assignee of a note based on a gambling consideration who knows the consideration on which the note is based, cannot recover although the makers of the note before he purchased it, assured him that it is valid and will be paid. (Beverly v. Smith, 1 Wash., 297; Manning v. Manning, 8 Ala., 138; Finn v. Barclay,, 15 Ala., 629; Pettit

v. Jennings, 2 Robinson, 676.) We, therefore, conclude for this reason that the circuit court erred in overruling the demurrer to the reply.

Judgment reversed and cause remanded for further proceedings consistent herewith.