## STANDARD FACTORS CORPORATION v. NATIONAL RUBBER MACH. CO.
### No. 99.

Circuit Court of Appeals, Second Circuit.

Nov. 18, 1943.

Schiff, Dorfman, Stein & Brof, of New York City (Charles H. Tuttle, of New York City, of counsel), for plaintiff-appellee.

White & Case, of New York City (Thomas Kiernan and James McCarron, both of New York City, of counsel), for defendant-appellant.

Before SWAN, CLARK, and FRANK, Circuit Judges.

FRANK, Circuit Judge.

Defendant made a contract with Baldwin Locomotive Works, a government "prime contractor" for the construction of Army tanks, under which defendant was to construct gun mounts for use in such tanks. The evidence, on the trial before a jury, showed that, on March 11 and March 19, 1942, defendant and Universal Machine Tool Manufacturing Company entered into four written agreements by which Universal was to manufacture for defendant certain parts for such tanks at a named price to be paid by defendant, defendant in each case agreeing to pay 30% of the total price "as a down payment," the balance to be paid "on approval of the parts agreed to be machined." On March 9, before the first of these agreements was made, a representative of defendant was told by Universal that Universal was "a big concern, a going concern," and that it "would be able to jump right in and produce" the parts for defendant. Defendant contends that the evidence shows that the provisions for down payment were not agreed to until March 23; and there is evidence that, on March 21, Universal had expressly stated to defendant that it was in no financial difficulties. However, we think the evidence clearly establishes that the provisions for down payment were agreed to by defendant at least by March 13, i.e., before the representation made on March 21. On March 27, plaintiff, then proposing to advance monies to Universal in consideration of an assignment to plaintiff of the moneys due under the agreements between Universal and the defendant, asked for, and on the same day received, a letter from defendant advising that these con-

tracts "are in good standing but it is to be understood that any monies that may be made as down payments against such orders are to be used only for the completion of such orders which have been covered by government contract W 670-ORD-1814." Subsequently plaintiff made the advances to Universal and received the assignment. In its answer to plaintiff's complaint in this suit, defendant stated that on April 24, 1942, and April 29, 1942, "defendant learned that Universal was in financial difficulties with its creditors, which was resulting in Universal's loss of possession and the right to use the machinery and equipment needed by it to perform the said work, labor and services called for by the said order * * *" On April 28, 1942, defendant wrote plaintiff that the 30% down payment "is no longer in effect" because of a Presidential order; defendant subsequently admitted that there was no such Presidential order. On May 4, 1942, defendant wrote to plaintiff that the agreement to make a 30% down payment had been made by a representative of defendant who was without authority to make such agreement; this excuse defendant later recanted. On May 23, an involuntary petition in bankruptcy was filed against Universal; it was subsequently adjudicated a bankrupt and thereafter its trustee in bankruptcy was elected. On June 5, 1942, after this suit had been begun, defendant wrote Universal, referring to the contracts, and saying, "It is most important to get on with the work without further delay * * * Please get busy at once * * * We are ready to do our part, and expect performance from you." The defendant introduced evidence showing that, according to entries on Universal's books of account from April, 1941, to November 27, 1941, Universal was insolvent in that, according to those book figures, its liabilities substantially exceeded its assets. At the close of the evidence, the trial court directed a verdict for plaintiff and entered judgment for plaintiff in the amount of $31,496.46. From the judgment defendant appeals.

The sole question is whether the defendant was entitled to go to the jury on the defense that defendant was defrauded into entering into the contracts with Universal through false representations by Universal that it was solvent.

■ The evidence as to a representation to plaintiff by Universal of Universal's solvency on March 9 was none too strong, but was sufficient to go to the jury. There was also enough evidence to go to the jury as to Universal's knowledge on March 9 that it was insolvent; for, on March 27, an officer of Universal told a representative of plaintiff that Universal was insolvent; the jury could infer from that evidence that Universal knew of its insolvency eighteen days earlier.

This evidence would also serve to justify an inference that Universal was in fact insolvent on March 9. The testimony as to the book figures would further support such an inference. With respect to those book figures, plaintiff makes several arguments. It first contends that a substantial advance in the costs of plant equipment useful in manufacturing war materials occurred immediately after we entered World War II, and that that fact was sufficient to establish conclusively that any inference, drawn from those books, as to the solvency of Universal on March 9, was wrong, since the book figures showed merely the original costs of Universal's plant. We cannot agree. The facts to which plaintiff refers were part of the evidence to be weighed by the jury together with the other evidence above noted in determining whether on March 9 Universal was solvent. Plaintiff also urges that the books were wholly inadequate as proof of Universal's financial condition because they did not include the down payment owing from defendant; but this figure, while it would have added to Universal's cash position, would not necessarily increase its net worth; any such increase would be dependent on the net profit which Universal would derive from fulfilling the contracts with defendant, and that was properly a jury question. While the book figures may not have shown the financial condition of Universal on the precise date of March 9, they were sufficient to justify the jury in making an inference that Universal was insolvent on that date. Of course, book figures are by no means conclusive, but the jury could have properly made a finding of insolvency on the basis of those figures. There was, then, sufficient evidence from which the jury could infer that on March 9, Universal was, and knew that it was, insolvent.

■ Plaintiff next contends that the letter of March 27 from defendant to plaintiff estops defendant from setting up fraud in the making of the contract between Uni-

versal and defendant. We cannot agree. We find no cases not relating to negotiable instruments where, in such circumstances, an obligor is estopped to set up defenses unknown to him or of which he was not on reasonable notice unless at least he makes an unequivocal statement that there are no defenses whatever.[1] But we need not pass on that question here because of the following: Collins, an officer of Universal, testified that on March 27 he told an officer of plaintiff that plaintiff would be risking any money which it loaned to Universal, as Universal was then insolvent and not satisfactorily equipped to perform its contracts, that any financial statement given by Universal to plaintiff showing solvency would be fraudulent, and that any money that would come to Universal from any advances would be used to pay its outstanding debts. These facts, coupled with the qualified character of the statement made in defendant's letter of March 27, make it impossible, if the jury believed Collins, to hold that defendant was estopped by that letter.[2]

From the foregoing, it appears that the jury could have concluded that Universal made a deliberately false representation to defendant that Universal was solvent on March 9. Had the jury so concluded, that fact would have constituted a good defense, unless defendant knew, when it wrote its letters of March 27, April 28, May 4 or June 5, that Universal had been insolvent on March 9. For, if it had such knowledge when it wrote any of those letters, then defendant waived the fraud. But there is no conclusive proof of such knowledge. The answer of defendant shows that on April 24 and April 29, defendant knew that, at that time, Universal was in financial difficulties. The jury might infer from that fact that defendant, on April 24 and April 29, knew that on March 9 Universal had been insolvent. But the jury would not be obliged to draw such an inference. The question whether fraud has been waived, or whether there has been an unreasonable delay in discovering or complaining thereof, is a question of fact for the jury unless the evidence is so clear as to permit of only one reasonable conclusion. Walter v. Laidlaw, 249 N.Y. 46, 51, 162 N.E. 580; Sacramento Suburban Fruit Lands Co. v. Schreindl, 9 Cir., 36 F.2d 932; International Harvester Co. of America v. Rieke, 8 Cir., 9 F.2d 776, 781; 27 C.J. 77; 37 C.J. S., Fraud, § 131, p. 456. The question of waiver of the fraud should have been left to the jury.

We conclude therefore that the court erred in directing a verdict for plaintiff and in entering a judgment for defendant.

Reversed.

---

[1] The cases cited by plaintiff come within one or the other of those categories; see Petrie v. Feeter, 21 Wend., N.Y., 172; Lynch v. Kennedy, 34 N.Y. 151; Holzbog v. Bakrow, 156 Ky. 161, 160 S.W. 792, 50 L.R.A.,N.S., 1023; Skinner v. Norman, 165 N.Y. 565, 59 N.E. 309, 80 Am.St.Rep. 776.

[2] Among other things, Collins' statement to plaintiff (if the jury believed it) showed that Universal would almost surely be unable to use the down payments from defendant for the completion of the contracts between defendant and Universal.